# Cambria Street.

1. Road viewers reported that they had been sworn "to the faithful discharge of their duties." *Held* to be insufficient under Act of June 13th 1836, sect. 53, requiring them to make oath to perform their duties "impartially and according to the best of their judgment."

2. It appeared by their report that the six viewers appointed met, one was found incompetent, the others were sworn and adjourned;—another was afterwards appointed by the court who with the five viewed and was afterwards sworn before hearing testimony, &c. *Held*, that the viewer should have been sworn before he viewed.

3. Several exceptions were filed; the third was that the viewers were not sworn according to the act, on this exception the court set the report aside and referred it back to the same viewers, and dismissed the others; the viewers in their report on this reference reported, that before entering upon their duties to assess the damages they had been sworn "to perform their duties impartially and according to the best of their judgment, &c." The first report having been set-aside the jurors erred in treating it as sent back for amendment.

4. The facts set out in the report as to the mode of the oath and that the new viewer was not sworn before viewing, were radical defects which could not be cured by amendment.

5. After the second report the court amended the order sending the first back, so as to make it read that it was sent back to report on the third exception;—and then confirmed the report as amended. *Held*, that this order did not give the second report validity.

6. A petition for assessment of damages need not be signed by a party in interest himself.

7. Shafferstown Road, 3 Watts 475, distinguished.

February 26th 1874.    Before Agnew, C. J., Williams, Mercur and Gordon, JJ.  Sharswood, J., at Nisi Prius.

Certiorari to the Court of Quarter Sessions of *Philadelphia* : No. 131, to July Term 1872.    In the matter of Cambria Street.

On the 4th of February 1871, the Fair Hill Land Company presented to the Court of Quarter Sessions a petition, setting out that under resolutions of the Councils of Philadelphia, the Commissioner of Highways had notified "the owners of property through which Cambria Street will pass from Second Street to Sixth Street" and "from Sixth Street to Tenth Street," that said street would be required for public use; that petitioners owned ground which would be taken by the opening of that street, and that they would sustain damages thereby.    They prayed the court to appoint viewers to assess damages, &c.

The petition was signed, "J. T. Pratt, Attorney," and was sworn to by George E. Wagner, Secretary of the Company.

Viewers were appointed, who reported:—

* * * "That pursuant to notice all the undersigned (with the exception of William Dingas), together with Jacob Shinglaff, met at the office of the City Solicitor, on Friday March 31st 1871, at 3 o'clock, P. M.    At this meeting the jury being sworn and examined on their voire dire were all found competent except Jacob Shinglaff who being already upon another jury for the opening of

[ Cambria Street.]

Clearfield street was found to be disqualified; the other jurors were then each severally sworn or affirmed to the faithful discharge of their duties, the petition having first been read to them. The jury then adjourned to meet, &c. * * * Pursuant to which adjournment the jurors met at the time and place last mentioned and proceeded to view going over the whole line of the street from Second to Tenth street, all the jurors being present as well as William Dingas, who had since the last meeting of the jurors been appointed a juror or viewer by the Honorable Court in the place of Jacob Shinglaff disqualified. After view the jurors adjourned to meet at the office of the City Solicitor, &c., April 13th 1871, at which time and place all the jurors met, when William Dingas aforesaid was sworn and examined on his voire dire, and being found qualified to serve was sworn to the faithful discharge of his duty by Alderman Delaney, by whom the oath or affirmation had been previously administered to all of the other jurors, the petition having been first read in the hearing of all. Proof of service of notice on all the owners of property along the line of the street, was made at this meeting; William W. Ashman, Esq., appeared on behalf of the city. No other parties appearing the jurors adjourned to meet at the same place at 3 o'clock, P. M., April 20th 1871, at which time and place the jury met, all the jurors being present, as also * * * Joseph C. Ferguson, Esq., for Messrs. Kelley and Eagin, tenants of Isaac Norris, * * and also at the subsequent meetings by the same counsel, and by Isaac Norris, Esq., who appeared for himself and as attorney for George W. Norris, and * * * by Henry Norris.

"The jurors continued to meet at the last-mentioned place, by adjournment from time to time, to wit, &c., * * * At the last meeting, July 20th, proof of service of notice on all parties upon whom damages had been assessed was made except on the representatives of the estate of Charles Norris, deceased. Isaac Norris, Esq., appeared in response to said notices for himself, George W. Norris and Henry Norris, and addressed the jury concerning their award of damages. At this meeting the jurors were all present and adjourned to meet, &c., * * * on Thursday, August 3d 1871, at the last-mentioned place in order that notice might be served on the representative of said estate, Lewis C. Norris, at which said time and place all the jurors met with the exception of Alexander Johnson, and having heard the proof of said services of notices, after signing this report adjourned. * * * After due deliberation and consideration of the advantages and disadvantages, &c., do award the following named parties entitled to damages, &c., that is to say: To Michael Simons the sum of three hundred dollars; to Joseph S. Toland the sum of three hundred dollars, and the jury do further say that none of the other owners or tenants of property on the line of the street will be damaged by the opening of the same, and therefore no damages are awarded to any one excepting as hereinbefore stated. And the

[Cambria Street.]

jury do further report, that of the damages above awarded the sum of one hundred and fifty dollars shall be paid by the city of Philadelphia, and the sum of four hundred and fifty dollars shall be paid by the property-owners on the line of the street who are benefited thereby. And the jury do further report, that each of the following described properties be assessed to the amount hereinafter set forth, as being benefited by reason of said opening of the street aforesaid."

They then assessed damages in specific sums on five designated lots, belonging severally to Isaac Norris, George W. Norris, Henry Norris and the estate of Charles Norris, deceased.

The report was signed by Rowland A. Stokes, *William Dingas,* Francis Jennings, Alex. Johnson, Joseph H. Sutton, F. Fisher.

The Norrises filed exceptions to the report; amongst others the following :—

1. Because William Dingas was substituted as a juror in the stead of Jacob Shinglaff, originally appointed, without any legal cause of disqualification existing, or being assigned, to said Shinglaff.

2. Because it appears, by the report, that said Dingas viewed the premises before being sworn.

3. Because the jurors were not sworn or affirmed according to law, in this, the report stating they were sworn or affirmed, "each severally to the faithful performance of their duty," whereas, by law, they are required to " swear or affirm to perform their duties impartially and according to the best of their judgment."

5. Because the petition is not signed by any one authorized to sign, or having any interest as landowner.

9. That the report had not been made and filed in court before the owners of properties, against which damages were assessed, were notified, according to the requisitions of the Act of Assembly.

The court decreed :—

" The third exception filed by Norris estate is sustained and the report is set aside and referred back to the same : the other exceptions are all dismissed."

The viewers again reported:—

" We, the undersigned, the jurors appointed by your Honors to assess the damages sustained by property-holders in consequence of the opening of Cambria street from Second to Tenth streets, reconvened by order of your Honor's court for the purpose of reporting more fully as to the manner they were sworn, do, this 11th day of April, A. D. 1872, certify that before entering upon their duties as jurors in the above matter, they were separately sworn to perform their duties impartially and according to the best of their judgment, in accordance with the Acts of Assembly in such cases made and provided ; the said acts being read at the time and the said oaths administered in accordance therewith."

[Cambria Street.]

The report was signed by the same names.

On this report the court made the following decree :—

"1872, June 26th.    The above order is amended so as to make it read 'The third exception filed by Norris estate is sustained and the report is referred back to the same jury to report upon said third exception ; the other exceptions are all dismissed.'    *Eo die*, report of jury, as amended, confirmed."

The 53d sect. of the Act of June 13th 1836, Pamph. L. 559, 2 Br. Purd. 1203, pl. 87, enacts : " That all viewers shall before they proceed to the duties of their appointment respectively make oath, &c., to perform the same impartially and according to the best of their judgment," &c.

The Norrises removed the record to the Supreme Court by certiorari and assigned for error that the court overruled their exceptions ; specifying them as in the court below.

*E. Waln* (with whom was *J. P. Norris*), for certiorari, cited on 2d exception : Broad Street, 7 S. & R. 444.   On 5th exception : Shafferstown Road, 3 Watts 475.

*S. W. Pettit* and *A. Thompson*, contrà.

The opinion of the court was delivered, March 30th 1874, by

GORDON, J.—On the 4th day of February 1871, the Fairhill Land Company in its petition to the Court of Quarter Sessions of Philadelphia, set forth that by resolution of the councils of said city on the 13th of October 1869, the chief commissioner of highways was directed to notify the owners of property over which Cambria street would pass from Second to Sixth, and also a like resolution of the 29th of December 1870, to notify the owners of property over which said street would pass from Sixth to Tenth, that said street would be required for public use, and thereupon prayed the court to appoint six reputable and responsible citizens, residents of the Twenty-fifth Ward, and owners of real estate therein, as a jury of viewers to assess damages and report to the court.

In accordance with this prayer the required viewers were appointed.    The duties of such a jury of viewers are very clearly pointed out in the several Acts of Assembly, and had these acts been consulted, and their directions followed, a good deal of trouble would have been saved.    A preliminary step, as directed by the 53d section of the Act of June 13th 1836, is, that they shall *before they proceed to the duties of their appointment, respectively make oath or affirmation to perform the same impartially, and according to the best of their judgment.*

Instead of following this plain prescription of the statute the viewers in this case were sworn "faithfully to discharge their duties."    This was erroneous.    Admitting that an oath of this

[Cambria Street.]

kind would be as binding on the consciences of honest men as any that could be framed, nevertheless it was certainly not the one directed by the act. The legislature had an object in view in the oath which is prescribed. It was designed to call the attention of each juror to the obligation resting upon him to perform his duty "impartially," and to the best of his judgment. We need hardly say that this intention is not filled by a general oath to perform his duty faithfully. The act indeed may be super-cautionary, but of this neither the jury nor ourselves are the judges, it is our duty to obey that which is written. This case is certainly as strong as that of Thompson v. White, 4 S. & R. 135; where the appellant from an award of arbitrators made affidavit "that it is not for the purpose of delay such appeal is entered, but because he believes injustice has been done." This was held insufficient, because the word "firmly" prescribed by the Act of 1810 was omitted.

But again, it appears from the report filed, that at their first meeting all the jurors were sworn but one, who was found to be disqualified. Thereupon they adjourned over until such vacancy could be filled by the court's appointment. This appointment having been procured, they met and proceeded to view the pre-mises, the recent appointee making one of the jury. This occurred upon the 3d day of April 1871. After they had completed this view, they adjourned to meet at the office of the city solicitor, on the 13th of April, "at which time and place," says the report, "all the jurors met, when William Dingas," the new juror, "was sworn and examined on his *voire dire*, and, being qualified to serve, was sworn to the faithful discharge of his duty by Alderman Delaney, by whom the oath or affirmation had been previously administered to all the other jurors, the petition having been first read in the hearing of all."

That this was erroneous is beyond dispute, because the act requires the jurors to be sworn as the prime requisite in their qualification, and a view without this is bad: Bryson's Road, 2 Pa. R. 207. The counsel for the appellees, however, insists that because a view by five jurors would have been good, therefore Dingas may be disregarded, and the report treated as though made by five only. But this cannot be. Dingas was a juror, and he had his say and his influence with and upon his brother jurors.

For aught we know, he may have exercised a controlling influ-ence in their councils, and we therefore cannot treat him as a cipher: and see case of Broad Street Road, 7 S. &. R. 444. But now the Court of Quarter Sessions takes the matter in hand, and upon exception by the representatives of Norris's estate they set aside the report and refer the matter back to the same jury.

This was done on the appellant's third exception. That excep-tion was to the fact that the jurors were not sworn or affirmed

[Cambria Street.]

according to the terms of the Acts of Assembly.   As this re-refer-
ence was regular, Beigh's Road, 11 Harris 302, it was now only
necessary that the jury should be resworn or affirmed, and proceed
to do their work *de novo*, and all would have been right.   Instead
of this, however, the jury proceed to amend their report, and certify
the following : " We, the undersigned, * * * * * reconvened by
order of your Honor's court for the purpose of reporting more fully
as to the manner they were sworn to do, this 11th day of April,
A. D. 1872, certify that before entering upon their duties as jurors
in the above matter, they were separately sworn to perform their
duties impartially, and according to the best of their judgment."
Now, the first error in this certificate is that it contained a mistake
as to the nature of the order of the court.   That order did not
send the report back to the viewers for amendment, but it annulled
that report by setting it aside; in the second place, it does not,
nor can it, amend the facts so set forth in the first report, that the
jurors were not properly sworn, and that Dingas was not qualified
until after the view of the premises.   These were radical defects
which no amendment could cure.

Neither can we see how the order of the court made on the 26th
of June, modifying the one made on the 6th of March, so as to
cover this amendment, can help the matter.   As the court had no
power to authorize the amendment contrary to the facts in the
case, those facts being material, it follows as a logical sequence,
that its adoption after it was made could not give it validity.

The fifth exception has been insisted upon as sustained in the
decision in 3 Watts 475 ; but we are not inclined to adopt this
view of the case.   Ordinarily, the party in interest must sign
a petition of review, but there is an obvious distinction between
such a case and that of an application for the assessment of dama-
ges.   To construe the rule otherwise would, in many cases, prevent
owners of land from obtaining damages at all, as their personal
attention may often be impossible.   So in the present case, the
petitioner being a company, must act through a representative, if
it would act at all, and we know none more proper than its secre-
tary.   Besides, this matter has heretofore been ruled in Harvey *v.*
Lloyd, 3 Barr 331 ; Sharett's Road, 8 Barr 89.

With reference to the ninth exception, we say the want of notice
to a landowner, upon whose property part of the damages has been
assessed, as required by the second section of the Act of April 1st
1864, would be fatal to a final order on the report, but that ques-
tion does not affect this case, as any such omission has been cured
by the appearance of the parties in interest at the time of the filing
of the report.

> Decree of the court below overruled, and the report and
> proceedings thereon set aside.