In the Matter of the Petition of DANIEL R. KENDALL to Vacate
an Assessment.

The fact that the commissioners appointed under the act of 1872 (Chap. 580,
Laws of 1872), "in relation to certain local improvements in the city of
New York," failed to take the prescribed oath of office before entering
upon the performance of their duties, does not affect the validity of their
action in certifying that a contract was free from fraud; they having
been appointed by competent authority and having discharged their du-
ties without question as to their official character were at least officers *de
facto*, and their official action is binding and conclusive.

It is no objection to the validity of their action as officers *de facto* that it
might result in taking private property to pay assessments.

The determination of said commissioners that a contract was free from
fraud is binding, not only upon the city and the contractors, but as to the
public; the effect of their certificate is to confirm the contract and
render it absolutely valid, and a contract thus validated is as effectual as
a basis for an assessment as if it originally had been valid.

*In re Burmeister* (76 N. Y. 174), distinguished.

(Argued May 3, 1881; decided May 13, 1881.)

APPEAL from order of the General Term of the Supreme
Court, in the first judicial department, made December 1,
1880, which reversed an order of Special Term vacating an as-
sessment upon land of the petitioner for a sewer in One Hun-
dred and Tenth street, in the city of New York.

The objections to the assessment were that a part of the ex-
pense of the work was for rock excavation which was not sub-
mitted to competition, a price being fixed therefor which the
bidders were obliged to accept; also that surveyor's fees were
included. The contract had been submitted to the commis-
sioners appointed under the act chapter 580, Laws of 1872,
and was certified by them to be free from fraud.

The further material facts appear in the opinion.

*Thomas Allison* for appellant. The seventh section of the
act of 1872 (Chap. 580) did not prevent the vacation of an as-
sessment where there was a want of authority. (Laws of 1872,
chap. 580, § 7; *In re Prot. Ep. School*, 75 N. Y. 324–328; *In
re Cram*, 69 id. 459; *In re Second Ave. Church*, 66 id. 400.)

The owner not having been a party to the requirement which set the commissioners in motion, he was not prohibited from asserting against the assessment any objection fatal to the proceedings. (*In re Phillips*, 60 N. Y. 16 ; *In re Little*, id. 343; *In re Anderson*, id. 457 ; *In re Burke*, 62 id. 422 ; *Matter of Cram*, 69 id. 452 ; *Matter of N. Y. Prot. Ep. School*, 75 id. 324 ; *In re Burmeister*, 76 id. 174.) Chapter 312 of Laws of 1874 requires the vacation of an assessment in a case where there is substantial error, and in effect superseded and acted as a repeal *pro tanto* of the act of 1872. (*In re Second Ave. M. E. Church*, 66 N. Y. 395 ; *In re Prot. Ep. School*, 75 id. 324; *In re Emigrant Ind. Sav. Bk.*, id. 389 ; *In re Cram*, 69 id. 452 ; *In re Waltet*, 75 id. 354.) The vacation of an assessment is not confined to cases of repavement and fraud, but may be resorted to where there has been substantial error. (*In re Cram*, 69 N. Y. 352 ; *In re Prot. Ep. School*, 75 id. 324; *In re Mahan*, 81 id. 621 ; *In re Manhattan Sav. Inst.*, 82 id. 142.) The defect complained of here is a substantial error. (*In re Mahan*, 81 N. Y. 621 ; *In re Manhattan Sav. Inst.*, 82 id. 142 ; *In re Merriam*, 84 id. 596.) The terms of a statute may be held directory as between the city and the contractor, and mandatory when the proceedings taken under it in any way affect the rights of a citizen. (*Moore v. The Mayor*, 73 N. Y. 249, 251.) The oath taken cannot be construed into an assumption on the part of the commissioners to render such a decision as the act required. (*Merritt v. Village of Portchester*, 71 N. Y. 309.) It was a condition precedent to their right to perform the functions of their office, and the oath was one of the safeguards provided by statute for the protection of the property-holder, and the legislature, by prescribing the form, made the form the essence of the act. (*Adriance v. McCafferty*, 2 Robt. 153 ; *Hopkins v. Mason*, 42 How. 115.)

*James C. Carter* for respondent. The contract was completely purged of the vice charged against it by the certificate of the commissioners, under the act of 1872. (*Brown v. The Mayor, etc.*, 63 N. Y. 239.) The oath actually taken must

be deemed a substantial compliance with the requirements of the statute. (Dillon on Corporations, §§ 153, 154; *Stockle* v. *Silsbee*, 41 Mich. 615; *In re M. & H. R. R. Co.*, 19 Wend. 135; 2 R. S. 605, § 7 [2d ed.]; *Parish* v. *Golden*, 35 N. Y. 462; *Van Rensselaer* v. *Whitbeck*, 7 id. 517; *Buff. & State Line R. R. Co.* v. *Supvrs. of Erie Co.*, 48 id. 93, 105; *Brevoort* v. *City of Bklyn.*, 18 Hun, 383, 385; *Parish* v. *Golden*, 35 N. Y. 462; *People* v. *Cook*, 8 id. 67; 14 Barb. 259, 290; *Olney* v. *Pearce*, 1 R. I. 292; *Blodgett* v. *Holbrook*, 39 Vt. 336; *Supvrs. of Allegany Co.* v. *Van Campen*, 3 Wend. 49; *Coleman* v. *Shattuck*, 62 N. Y. 353; *Bowman* v. *Cockrill*, 6 Kans. 311, 324; *People* v. *Supvrs. of Ulster*, 34 N. Y. 268, 272.)

EARL, J. It is conceded that this assessment should be vacated in part but for the action had under the act chapter 580 of the Laws of 1872. It was shown that the contract for the work, for the expense of which the assessment was laid, was presented to the commissioners named in that act, and that they certified that it was free from fraud.

It is contended on the part of the petitioner that the determination of the commissioners was wholly invalid, because, before entering upon their duties, two of them did not take the oath required by the act. Section 2 of the act provides that, before entering upon their duties, they shall severally take and subscribe an oath or affirmation that they will "severally, justly and fairly hear and consider the matter submitted to them, and make a just and true decision thereof." The two took the oath as follows: "That I will support the Constitution of the United States, and the Constitution of the State of New York, and that I will faithfully discharge the duties of the office of commissioner mentioned in such chapter 580 of the Laws of 1872, according to the best of my ability."

Without now determining whether or not the oath taken was a substantial compliance with the act, a broader view may be taken. The commissioners were public officers appointed to discharge important judicial functions. They were to hear

parties, take evidence and make determinations. Their action would, therefore, have been valid if they had taken no oath. They were appointed by competent authority. They discharged the duties of their office without, so far as appears, any question as to their official character. They were, therefore, at least officers *de facto*, and their official action was as absolutely valid and binding as to the parties appearing before them and the public, as it would have been if the prescribed oath had been literally taken, and they had thus, in the strictest sense, become officers *de jure*. (*In the Matter of the M. & H. R. R. Co.*, 19 Wend. 135; *Weeks* v. *Ellis*, 2 Barb. 320; *People* v. *Cook*, 8 N. Y. 67; *People* v. *Hopson*, 1 Denio, 574.) It would be a monstrous proposition to hold that the action of town assessors or of trustees of villages who under the general village act perform the duties of assessors, was void because they had neglected to take any official oath.

It is no answer to the validity of the action of these commissioners as *de facto* officers that their action could result in taking private property for assessments which might be consequent upon their action. So a sheriff or constable may seize private property, and a judge may render a judgment, which may result in taking or imposing burdens upon property. And yet the action of such officers could not for that reason be assailed, because they had failed to take the proper official oath of office and hence were merely *de facto* officers.

We think, therefore, that it is clear upon this ground that the alleged defect in the oath taken by the two commissioners does not impair the validity of their action.

It is further contended, on behalf of the petitioner, that the determination of the commissioners was binding only upon the city and the contractor — the parties to the submission under the statute. This contention, we think, is not well founded.

Section 1 of the act provides that all contracts which the commissioners shall certify to be free from fraud are ratified and confirmed, and declared to be valid and binding, and if the contracts have not been executed, and the commissioners shall certify that there has been no fraud in the award of the

contracts, that the proper officers shall execute the same. Section 2 provides that the decision of the commissioners shall be binding upon the city and upon the other party to the contract or award, and shall be final and conclusive as to all questions of fraud in relation to the contracts, agreements or awards and the performance thereof. Section 3 provides that the comptroller of the city shall, upon the contracts thus certified by the commissioners, make such payments as shall be required by the contracts to the parties entitled thereto in the same manner, and to the same extent, as if the contract had originally been regular, sufficient and·valid. Sections 4 and 5 provide for assessments upon property benefited of the expense of the work performed, or to be performed, under the contracts certified by the commissioners under the act. The object of this act as is thus apparent was to take a whole mass of illegal and invalid contracts, and if they were certified by the commissioners to be free from fraud, to confirm and render them absolutely valid. That the legislature had the power to do this is not questioned. (*Brown* v. *The Mayor*, *etc.*, 63 N. Y. 239.) The moment the contracts were thus made valid and binding upon the parties thereto, they were just as effectual as a basis for an assessment as if they had originally been valid. It cannot be supposed that the legislature meant to make these contracts binding upon the city, to compel it to pay for work done under such contracts and to authorize assessments to be made for expenses of such work, and yet to leave the property-owners the right to assail such assessments because of the invalidity of the contracts. It is true that the determinations of the commissioners are not binding as such upon any one but the parties to the contracts. But their determinations purge the contracts of all infirmity and render them valid. The property-owners are not parties to the contracts. They need not be consulted about them and have no right to be heard in relation to them. Their right to a hearing first comes when assessments are to be made against them. A contract valid and binding upon the city and under which it is obliged to pay for work done can lay the founda-

tion for an unimpeachable assessment.   This conclusion as to the absolute validity of such contracts is in harmony with some views expressed by ALLEN, J., in the *Matter of Peugnet* (67 N. Y. 441), but not with with some expressed by CHURCH, C. J., in the *Matter of Burmeister* (76 N. Y. 174).   A careful examination of the act of 1872, and preceding and subsequent legislation *in pari materia* has led us to the conclusion we have now reached.   In the *Burmeister Case* we had under consideration section 7 of the act of 1872, in a case of repavement, and we do not deem it important now to consider or construe that section nor to determine precisely how far that case should be limited as this is not a case of repavement and there is no allegation of fraud.   These views lead to an affirmance of the order appealed from.

The order should be affirmed, with costs.

All concur, except FOLGER, Ch. J., not voting.

Order affirmed.