SAMUEL K. WILSON, PLAINTIFF IN ERROR, v. THE INHABITANTS OF THE CITY OF TRENTON, DEFENDANTS IN ERROR.

| 53 | 645 |
| 56 | 331 |
| 53 | 645 |
| 58 | 42 |

1. In a proceeding to lay out and open a street, the charter of Trenton requires notice of the report of the board of assessors to be given to non-resident persons assessed, by publication, and to be served upon residents assessed.   *Held*—

1. That the mailing of a copy of the notice to the address of a non-resident was insufficient service.

2. That the service on residents must be personal, but personal service, within the meaning of the statute, would appear from the fact of the delivery of a copy of the notice to an agent duly authorized to receive it, or from circumstances justifying an inference of the actual delivery of a copy to the person to be affected thereby.

2. The return showed that the only service on some residents assessed, was by leaving a copy of the notice at their residence, with a member of the family. *Held,* that this did not show the service required by the statute.

· On error to the Supreme Court. For opinion by the Supreme Court, see *ante p.* 178.

This writ of error has brought up the record of a judgment of the Supreme Court, affirming proceedings taken by the city of Trenton, by which lands of plaintiff in error were condemned for a public street and an assessment for the expenses of the improvement imposed on other lands belonging to him.

For the plaintiff in error, *George M. Robeson.*

For the defendants in error, *John Rellstab* and *William M. Lanning.*

The opinion of the court was delivered by

MAGIE, J.   The principal question presented in this case was raised by a reason filed on the return of the *certiorari* in the Supreme Court, objecting to the assessment upon plaintiff in error, on the ground that certain notices had not been given as required by law.

The law regulating the mode in which lands in the city of Trenton may be taken and condemned for public highways and assessments may be imposed to pay for the same, is, in the respect now in question, contained in the provisions of the "Act to provide for the more efficient government of the city of Trenton," approved March 19th, 1874. *Pamph. L., p.* 331.

By the terms of that act a board of assessors is required to first assess the damages sustained by each owner of land taken, including the value of such land, and to next assess the amount of such damages upon lands benefited, and to then report their action on both assessments to the common council.

By section 83 of the act, the common council is required,

within a month from the presentation of the report, "to cause a notice of the proportion of said assessment and costs to be served upon every person, his or her guardian or legal representative, against whom the same is made and whose residence is in said city, and also to cause like notice, directed to such persons as do not reside in said city, to be inserted in one or more of the newspapers of said city for the space of one month."

It is also provided that if, within two months from the presentation of the report, two-thirds of the persons assessed file with the city clerk their refusal in writing to agree to the assessments, no proceeding to enforce their collection shall be had; but if, within that period, no such refusal is filed, the assessments become binding and conclusive; they may be collected by action or by a sale of the lands in respect to which they were made.

While the act does not expressly declare that the assessments will thus become binding only in case notice to those assessed has been given as required, yet this intent is so plain that it was conceded in the argument that such construction must be given to these provisions.

The legislature may prescribe how such notices may be given. The mode prescribed must be strictly followed and the proceedings must show the prescribed notice. *Kohler* v. *Guttenberg*, 9 *Vroom* 419; *Kellogg* v. *Elizabeth*, 11 *Id.* 274; *White* v. *Bayonne*, 20 *Id.* 311. When no mode of giving notice has been prescribed, it was also conceded that what is called personal service is required and must appear.

The Trenton charter directed notice to non-residents to be given by publication; to residents, to be given by service on them, which must be construed to be personal service.

The return shows that assessments were imposed on sixteen persons, of whom one was non-resident and the others, including the plaintiff in error, were residents. It also shows that the common council directed the city clerk to give notice to them in the manner required by the charter. How he gave the notices only appears by his unverified report to

council. I cannot discover that the charter makes the service of such notices a part of his official duty and so within the sanction of his official oath. Had the council directed any citizen to serve these notices and then acted upon his letter stating the manner of service, the cases would seem to be undistinguishable. But this objection was not argued and has not been considered.

Assuming that the report of the city clerk properly exhibits the mode of service of the notices, it thus appears that the only service upon the non-resident was by mailing a copy of the notice to his address at Woodbury, New Jersey.

This was obviously not a compliance with the act which required, in that case, notice to be given by publication in a newspaper.

It further thus appears that service of the notice on ten of the residents assessed, including the plaintiff in error, was only made by leaving a copy of the notice at the person's residence with a member of the family.

It is contended that this does not show such service as is required by the Trenton charter.

Personal service, within the meaning of such acts, is to be distinguished, on one hand, from what may be called official service, such as the personal service of a summons in an action at law, which is required to be made by the officer on the defendant in person; and, on the other hand, from substituted or constructive service, which is such as by law conclusively results from the performance of certain prescribed acts, such as publication, posting and the like. The service required by this and similar statutes need not be made by an official or in a particular mode; if the required notice is conveyed to the person to be affected thereby, it is sufficient.

When a question of such service arises in a court of law on the trial of an issue, evidence of actual delivery to the party in person is conclusive proof. But in the absence of such direct evidence, indirect or circumstantial evidence would be admissible, and if it justified a reasonable inference that the

notice came to the hands of the party to be affected, would be sufficient proof.

Whether the required service has been made in a proceeding like that before us, must be determined by the facts appearing in the return. It will not, however, follow that the service must be pronounced insufficient, because it is not stated that the notice was actually delivered to the person assessed in person, for, if the facts stated justify a reasonable inference that the notice actually came to his hands, in the absence of counter proof, that inference should be drawn.

Moreover, it cannot admit of doubt that a person, to be affected by such a notice, may expressly authorize an agent to receive such a notice for him, and that delivery of the notice to such an agent would be a delivery to his principal, which would be a personal service within the meaning of such statutes. But the existence of an agency and the authority of an agent may be implied from the acts and conduct of the principal. So, if the facts stated raise the implication of an agency with authority to receive such a notice for the principal, delivery of the notice to the agent so authorized would also be sufficient service thereof.

Similar views have been taken by English courts in respect to the service of notice to quit, which, in order to terminate certain tenancies, must be served upon the tenant.

In *Brown* v. *Lucas,* 5 *Esp.* 153, Lord Ellenborough held that proof that such a notice was left at the house where the tenant lived would not sufficiently establish its service.

But in *Smith* v. *Clark,* 9 *Dowl. Pr. C.* (*O. S.*) 202, where the proof was that notice had been delivered to the wife of the tenant at the door of his house, she being informed that it was a notice for him, it was left to the jury to say whether an actual delivery should not be inferred. The verdict showed that the jury found that there had been due service of the notice, and Lord Denman held that the inference could properly be drawn from the facts.

Of like import are the cases of *Griffiths* v. *Marsh,* 4 *T. R.* 464; *Doe d. Neville* v. *Dunbar, Moo. & M.* 10; *Doe* v. *Wat-*

kins, 7 *East* 551; *Widger* v. *Browning,* 2 *Car. & P.* 523; *Prior* v. *Ongley,* 10 *C. B.* 25.

In *Fanham* v. *Nicholson, L. R.,* 5 *Eng. & Ir. App.,* 561, it was held in the House of Lords that when a tenant was shown to have an agent empowered to receive all communications for him, the delivery of a notice to quit to such an agent was effectual service on the tenant. Lord Westbury held that if the circumstances were insufficient to establish an agency, they might raise a presumption of actual delivery of the notice to the tenant, which, in the absence of contradiction, would be sufficient.

When a question arose in our Supreme Court, in respect to the proper mode of serving a rule of court on a defendant corporation, it was said by the learned justice who delivered the opinion, that if a defendant was an individual, such a rule must be served on him personally, but if he had appeared by attorney, the service might be made on the attorney. *Dock* v. *Elizabethtown S. Co.,* 5 *Vroom* 312. But this does not carry the inference that when no attorney had appeared such service could only be established by proof of an actual delivery to defendant in person. The service upon the attorney was sufficient because he was defendant's agent in the suit. On like grounds the sufficiency of a service upon any agent duly appointed and authorized may be sustained, and the view is not inconsistent with the admission of proof of service from circumstances from which actual delivery may be inferred.

While, therefore, I conclude that the contention in behalf of plaintiff in error, that the service of the notices in question upon him and other residents of Trenton must appear to be of that sort which is called personal must be sustained, I do not agree that such service will only appear by a statement of actual delivery thereof to them in person. On the contrary, I deem that such service would appear either from the fact of delivery to a duly accredited agent to receive such notice or from circumstances justifying an inference of actual delivery.

But looked at in this light, it is obvious the proceeding before us does not show any sufficient service of notice on the persons assessed who were residents. The only fact stated is, that a copy was left at the residence with a member of the family. It does not appear of what age or degree of intelligence the member of the family was, nor whether accustomed to receive communications for the person affected by the notice. There is nothing, therefore, which shows delivery to an accredited agent. Nor is the single circumstance which is stated sufficient to justify an inference of the actual delivery of a notice.

This conclusion is fatal to the assessment imposed on the plaintiff in error.

But if that assessment be set aside and the award for lands taken remain undisturbed, plaintiff in error may collect from the city the amount thereof. Unless that amount can, by some subsequent proceeding, be imposed on lands benefited, according to the plain intent of the charter, the city cannot reimburse itself.

Extensive powers have been given to the courts by the " general act respecting taxes, assessments and water rates " (*Rev. Sup., p.* 602) to reimpose any defective assessment upon lands in fact liable thereto. So, under other general acts, a partial reassessment may be made by the city.

But the charter of Trenton is peculiar. Power has been given the city to condemn lands for public streets and to assess the expense on lands benefited, but if two-thirds of those assessed object in the specified mode, the assessments for benefits cannot be collected. Moreover, the city may, within a specified time, abandon the proposed improvement, when the right of the owner to collect the award and the right of the city to take the land will cease (section 84).

These peculiar features, designed for the relief of the assessed and of the city, remove this case out of the operation of the first act above referred to. For these lands are not, at all events, subject to these assessments, but only in case the due proportion of the assessed fail to object and the city does

not exercise its option of abandoning the improvement. The right to object and to have all parties interested so notified that they may object, and the right to abandon, ought not to be taken from the parties. Those rights can only be preserved by setting aside the whole report, so that a new report can be made, for they can only be exercised within a limited time after the presentation to council of the report.

The whole report, with the resolution of January 21st, 1890, should be set aside.

Other objections to the proceeding were strongly urged in argument, but on consideration no error has been discovered in the determination of the Supreme Court thereon.

The judgment must be reversed.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, DEPUE, DIXON, KNAPP, MAGIE, BROWN, CLEMENT, SMITH, WHITAKER. 10.