# DAVIS *et al.* v. BOARD OF COMMISSIONERS OF LINCOLN COUNTY *et al.*

No. 3649.     Opinion Filed March 11, 1913.

On Rehearing, December 9, 1913.

(137 Pac. 114.)

1. **DRAINS—Assessment—Injunction—Adequate Remedy by Appeal.** Where the commissioners of a drainage district have, by pursuing the provisions of the Drainage Act (chapter 32, secs. 3043-3077, Comp. Laws 1909), acquired jurisdiction to make assessments against property in the district for benefits, and the property owners have been given notice of a hearing on said assessments, as provided by statute, and have had an opportunity to be heard upon their objections thereto, such property owners cannot be heard to say in a proceeding for injunction that the assessments levied by the commissioners are greater than the benefits received, or are not in proportion to those levied upon other property receiving corresponding benefits, because such property owners have, by reason of section 3050, Comp. Laws 1909, an adequate remedy by appeal.

2. **DRAINS—Report of Viewers—Notice of Hearing—Necessity.** The provision of section 3052, Comp. Laws 1909, which requires that the county clerk shall, upon the filing of the report of the viewers of a drainage district, issue a notice directed by name to the property owners of the district, informing them of the date of the hearing on the report of the viewers as to assessments of benefits and damages, and that the same shall be published for four weeks in some newspaper printed and of general circulation in the county, is mandatory; and, where such notice is not given as provided by said statute, the assessment of benefits and damages is void as to all property owners who do not appear at said hearing, or otherwise waive the issuance and publication of such notice.

3. **DRAINS—Oath of Viewers—Necessity.** The provisions of section 3047, Comp. Laws 1909, require that the viewers of any drainage district shall, before entering upon the discharge of their duties, take and subscribe to an oath to faithfully and impartially discharge their duties as such viewers, and to fairly and correctly make and return the report required by statute, is mandatory to the extent at least that, where the property owners for whose benefit the requirement of the statute is pri-

marily made do nothing to waive such irregularity, failure of the viewers to take the oath renders their proceedings void.

4.   DRAINS—Contracts—Injunction. Although the assessments for an improvement in a drainage district have been made and a cloud thereby created upon the title to the lands against which such assessments are made, the owners of such lands may maintain an action to enjoin the commissioners of the district from issuing bonds and contracting for the improvement and paying therefor, where the assessments made are void, and said further acts of the commissioners will further complicate the cloud upon the title to plaintiffs' property and result in the unlawful expenditure of public funds.

5.   DRAINS—Report of Viewers—Notice of Hearing—Sufficiency. The notice of a hearing on the report of viewers in drainage district assessment proceedings was void, where it did not contain in appropriate columns a tabulated description of every lot or parcel of land to be affected by the proposed improvement, as required by Comp. Laws 1909, sec. 3052.

(Syllabus by the Court.)

*Error from District Court, Lancoln County;*

*Chas. B. Wilson, Jr., Judge.*

Action by George Davis and others against the Board of County Commissioners of Lincoln county and others. Judgment for defendants, and plaintiffs bring error. Reversed and remanded.

Plaintiffs in error were plaintiffs in the court below, and defendants in error, defendants. Plaintiff's allege in their petition that each of them is the owner of land in Deep Fork drainage district No. 1, in Lincoln county; and that the land of each of them has been assessed to pay for the construction and maintenance of a drainage ditch in Deep Fork Valley; that defendants, as commissioners of said district, have caused a survey to be made for the purpose of digging said ditch, and for the purpose of paying therefor have levied assessments upon the lands in said district, including, among others, the lands of plaintiffs. Plaintiffs charge that the assessment levied upon their lands is much in excess of any benefits which can possibly accrue thereto by the

digging of the ditch; and that the amounts charged as benefits against their lands by defendants is much more than the value of their lands at the present time, and more than the value of their lands will be when said ditch is completed and in operation. By reason of these facts, it is charged that their lands are about to be confiscated and taken from them, without due process of law and in contravention of the fourteenth amendment to the federal Constitution. They further allege that in the drainage district are located certain school lands belonging to the state, against which defendants have made assessments for, benefits; but that defendants, knowing that there is no provision of law by which such assessment could be collected, have assessed against the lands of plaintiffs and others in like condition increased charges sufficient to cover the amount of benefits charged against the school lands, which cannot be collected. They also allege that a large number of Indian allotments are situated in said district; and that defendants are without power or authority to levy any assessment against any of these Indian allotments or to collect anything from them for the benefits such lands will receive by the construction of the ditch; and that defendants have raised the amounts assessed against the lands of plaintiffs to cover the deficiency that will be caused because of their inability to collect from said Indian lands any charges for benefits. By reason of these facts, they allege that their lands are charged with more than their proportionate share of the benefits that will be received from a construction of the ditch, all in violation of the fourteenth amendment to the federal Constitution. Defendants are now undertaking to issue bonds and let a contract for the construction of the ditch, which plaintiffs allege will create a lien upon their property and create a cloud on the title to their lands; and that the acts of the defendants are not only void, because of the foregoing facts, but also because defendants have proceeded to act without notice to the plaintiffs of their intention to construct the ditch having been issued as required by law, and because no notice

has ever been served upon the plaintiffs; and that the notice issued did not contain matters required by the statute to be contained therein, and has not been published for four weeks as required by law—by reason of which fact, they contend the burden of the benefits has been assessed against their lands without notice and opportunity to be heard ⸜on objections thereto. They also allege that the viewers appointed to assess said benefits proceeded to do so without taking and subscribing to the oath required by law of them before entering upon the discharge of their duties. Other irregularities in the procedure taken by the defendants are alleged, but a consideration of those already mentioned will be sufficient to dispose of the others.

This appeal is prosecuted from an order of the court sustaining a demurrer to plaintiffs' petition, and the sole questions presented for our consideration arise on the petition of plaintiffs and the demurrer of defendants.

*Devereux & Hildreth,* for plaintiffs in error.

*Grant Stanley,* for edfendants in error.

HAYES, C. J. (after stating the facts as above). The statutes controlling the questions this proceeding presents are to be found in chapter 32, Comp. Laws 1909. The board of county commissioners are invested with power at any regular meeting, when the same shall be conducive to public health, or where it will be a public utility or benefit to agricultural interests or to the soil of the lands affected, to cause to be constructed, straightened, or widened any underground or tile ditch or drain, or natural stream of water within the county. Said commissioners are invested with exclusive jurisdiction to hear and determine all contests and objections to the creation of such district. Before any district shall be established, however, there must be filed with the clerk of the county a petition signed either by 15 per centum of the owners or by the resident owners of 15 per centum of the

aggregated acres of land to be benefited or affected by the improve-ment and to be assessed for the construction thereof. Upon the filing of such a petition, the county commissioners are required to appoint three resident freeholders of the county, possessing cer-tain qualifications named in the statute, who, assisted by the sur-veyor, shall proceed at once, under the direction and order of the commissioners, to view the line of the proposed drain or im-provement and to report whether the proposed improvement is practical and necessary, and whether it is a private or public utility and benefit. After the report of the viewers is filed, the county clerk is required to fix by order of record the time for hearing the petition and report of the viewers, and cause notice to be given by publication for two weeks in some newspaper print-ed and of general circulation in the county of the pendency of the petition and of the date fixed for the hearing thereon. If upon its hearing the commissioners shall find that the proposed improvement is necessary or will be a public utility, they shall cause to be entered upon the record a finding to that effect, to-gether with an order directing the viewers previously appointed to go upon the line described in the order, and to establish the precise location of the improvement, and to make a schedule of all lots and parcels of land, together with the names and resi-dences of the owners that will be benefited, damaged, or condemn-ed by or for the improvements, and to make a schedule of dam-ages or benefits to each tract of 40 acres or less, and to make separate estimates of the cost of location and construction, and to apportion same to each tract and to apportion the benefits or damages that may result to each.

When this report is filed in the office of the county clerk, it is the duty of the county clerk immediately to set a hearing of same for some day during the next regular meeting of the board of county commissioners, and thereupon to issue in the name of the state a notice directed by name to every person returned by the viewers as the owner of any lot or parcel of land affected

by the improvements or of any interest therein, and also by name
to all others who in any manner may be ascertained to own such
land or any part thereof; and also, generally, to all other persons
without mentioning their names who may be interested therein,
notifying them of the petition and report and of the date on
which the petition and report will be heard, and requiring all
such persons notified to appear on that date to show cause, if any
they have, why the report shall not be confirmed as made or as
the same may be amended by the commissioners, and the assess-
ments therein described or reported shall not be made as reported
or as amended.   If the commissioners find that due notice has
been given, they shall examine the report of the viewers and sur-
veyor, and if they find that the assessments of the cost of loca-
tion and construction and of damages and benefits to each tract
are correct, and that the apportionment of cost is in proportion
to the benefits, and that the assessed damages of each tract are
fair and just, they shall approve and confirm the report.   But if
they find it unjust or erroneous, they may amend the report upon
evidence so as to make the apportionment fair and just in pro-
portion to the benefits or damages.   All lands benefited by the
drain or improvement are required to be assessed in proportion
to the benefits for the construction thereof.   From the order of
the commissioners approving the schedule of the assessments, an
appeal may be prosecuted to the district court by any person
aggrieved; and upon such appeal there may be determined either
or any of the following questions:   First, whether just compensa-
tion has been allowed for property appropriated.   Second, whether
proper damages have been allowed for property prejudicially af-
fected by the improvement.   Third, whether the property for
which an appeal is prayed has been assessed more than it will be
benefited, or more than its proportionate share of the cost of the
improvements.

As to those alleged irregularities which resulted in assessing
the property of plaintiffs a greater amount than the property will

Form 10.

be benefited, or more than the proportionate share of the cost of the improvement than should ·be assessed against the .properties of the respective plaintiffs, an adequate remedy by appeal is afforded by the statute to plaintiffs, if the commissioners acquired jurisdiction to make the order confirming the report of the viewers. Where a commission or the public officials, authorized by law to levy assessments against property for special benefits resulting from local improvements, obtain jurisdiction to levy the assessment, and an opportunity is given by appeal to the property owner to protect him against any irregularities in the proceedings, the rule which seems to us to be supported by the sounder reason, and which, in so far as we have been able to investigate the authorities, is supported by the weight of authority, is that, .whether the property owner has taken advantage of the appeal ·or not, the opportunity of a remedy by appeal will prevent him from obtaining an injunction as to any defect which might have been remedied ·by appeal. *Gardiner et al. v. City of Blufton,* 173 Ind. 454, 89 N.· E. 853, 90 N. E. 898, 22 Ann. Cas. 713; *Cauldwell et al. v. Curry et al.,* 93 Ind. 363; *Caskey v. City of Greensburgh,* 78 Ind. 233; *Jones v. Gable,* 150 Mich. 30, 113 N. W. 577; *Minn. & St. L. Ry. Co. v. Linquist,* 119 Iowa, 144, 93 N. W. 103; *Lyman v. City of Chicago,* 211 Ill. 209, 71 N. E. 832; *President & Fellows of Yale College v. City of New Haven,* 57 Conn. 1, 17 Atl. 139.

If the commissioners in the instant' case acquired jurisdiction to make the assessments against the property of plaintiffs, and plaintiffs had an opportunity to be heard upon the objections thereto, they cannot now be heard to say in this proceeding that the assessments levied are greater than the benefits received, or are not in proportion to those levied upon other property receiving corresponding benefits. On the other hand, if the commissioners did not acquire jurisdiction—to which question we shall next advert—the assessment is void, and further consideration· of these alleged irregularities need not be made.

Where local or special assessments are made against property to pay for local improvements and the cost of the improvements is by such assessments apportioned to the property owners in proportion to the benefits received, it is clear, by the great weight of authority, that at some stage in the proceedings some form of notice of the assessments to the property owners and an opportunity to be heard upon exceptions or objections to the assessments must be given; and statutes that fail to provide or to authorize such notice are declared void, because in violation of the federal constitutional provision which forbids the taking, of property without due process of law. The statute in the case at bar provides for service of notice by publication, but does not provide for personal service of such notice; and it is alleged in the petition that no personal notice was served. But the absence of provision for personal notice in the statute and the failure to give personal notice does not render the statute invalid and does not result in the proceeding denying to the property owners due process of law, if some other form of notice is provided and given which fairly and reasonably apprises the property owners of the proceeding to assess their property and gives them an opportunity to be heard upon the merits of their objections to the assessment. Where the statute provides for notice by publication, that accomplishes the purpose, and it is not void as being in violation of the constitutional provision which prohibits the taking of property without due process of law. *Bellingham Bay & British Columbia Ry. Co. v. New Whatcom,* 172 U. S. 314, 19 Sup. Ct. 205, 43 L. Ed. 460; *Wight v. Davidson,* 181 U. S. 371, 21 Sup. Ct. 616, 45 L. Ed. 900; *Ballard v. Hunter,* 204, U. S. 241, 27 Sup. Ct. 261, 51 L. Ed. 461; *Ritter v. Drainage Dist. No. 1,* 78 Ark. 580, 94 S. W. 711, section 121, Page & Jones on Taxation by Assessment.

This statute prescribes that notice shall be given by publication for four weeks in some newspaper printed and of general circulation in the county, the last insertion to be before the day

set for the hearing on the report of the assessment of benefits and damages by the viewers; but the publication of this notice was not made. There is no allegation in the petition whether the notice of the hearing on the petition and upon the report of the viewers as to whether the proposed improvement is practicable and necessary, or will be of benefit, or of public utility, was given. Since the presumption in this proceeding is that the officers discharged their duty and that the proceedings are regular, except as they are shown to be otherwise, the question might be suggested, although it has not been by counsel, whether plaintiffs, having received notice and had an opportunity to be heard at the hearing on the petition for the formation of the district and construction of the ditch and upon the report of the viewers as to its practicability and necessity, will not be held bound to take notice of subsequent proceedings; and failure to publish the notice of the hearing upon the assessment, although an irregularity, does not render the assessments void for want of jurisdiction of the commissioners.

In *People ex rel. Barber v. Chapman*, 127 Ill. 387, 79 N. E. 872, the court considered a statute that provided that after the commissioners shall classify the lands within the drainage district, and that when they have established or properly tabulated, or shown by a map such classification, the same shall be filed in the office of the town clerk for inspection and shall remain as a basis for levy of such taxes as may be needed for the purpose of the drainage district. The statute also provided that notice should be personally served upon all persons owning lands to be affected by the proposed work, notifying them of the time and of the place where the drainage commissioners would meet to hear any and all objections that might be made to the classification of lands. This notice was given, but the property owners complained that no notice was given or hearing had before resolution or order of the commissioners making the special assessments, or of the making and filing of the assessment rolls, and that they did not

learn of such facts until after the time allowed by statute for an appeal therefrom had expired. It was held that, since the statute did not require a notice of the subsequent proceedings to be given, the property owners were required to take notice thereof; and that the proceedings might be likened to a suit in a court, and, the commissioners having acquired jurisdiction over the person of the property owners, they are required to take notice of the different steps taken in the cause, without further notice.

Provision for notice of every step in assessment proceedings is not necessary in order to render a statute not subject to attack for denying due process of law; but the question here presented is not whether the statute is void because it takes property without due process of law, but whether the statute, having provided that two notices shall be given, the second notice must be given before the commissioners acquire jurisdiction to make the assessment and proceed to issue bonds and contract for the construction of the ditch. Statutes which authorize the taking of private property for public use are to be strictly construed. It is clear that it was not the intention of the Legislature to impose upon the property owners the burden and duty, after they had been given notice of the hearing upon the petition for the improvement and the report of the viewers thereon as to its practicability and necessity, to inform themselves thereafter at their own risk of the time and place where hearing would be had upon the report of the viewers as to the assessment of benefits and damagas; for, if such had been the intention of the Legislature, the second notice provided for by the statute would not have been required. At the second proceeding and at the second hearing a judicial power is exercised, and the property owners are vitally interested in it; for it is upon this hearing damages for property taken are awarded, and the cost for the benefits received are proportioned and assessed. To hold that the commissioners may dispense with the second notice required by the statute, and that an assessment without giving such notice is valid, would be to render

the statute a snare; for by it the property owners would be lulled into depending upon such notice to inform them of the place and time of the hearing at which their property would be taken, and the burden of improvement assessed against their property and be deprived of a hearing, whereas without the requirement of this notice they would exercise diligence to inform themselves of the time and place of such hearing. The rule of strict construction applicable to this character of statute requires that it shall be held that the provision for the second notice is mandatory; and that it was intended by the Legislature that the hearing upon the petition for the formation of the district and upon the advisability of the improvement, and upon whether the proposed improvement is practicable and necessary, and that the hearing upon the report of the viewers reporting the assessment of damages and benefits shall be treated as separate proceeding, and that the notice prescribed to be given for the original proceeding confers upon the commissioners jurisdiction only for that proceeding, and without the second notice, the commissioners are without jurisdiction and authority to confirm the report of the viewers upon the assessment of damages and benefits, and to make the assessment for the cost thereof against the property of the owners.

The statute requires that the viewers, before entering upon the discharge of their duties, shall take and subscribe an oath faithfully and impartially to discharge their duties as such viewers and truly and correctly make and return the report required by the statute. It is alleged that this oath was not taken. The text-writers generally declare that the failure to take the oath in substantially the form prescribed by the statute renders all the proceedings of the viewers invalid. Section 281, Page & Jones on Taxation by Assessment; section 629, Lewis on Em. Domain (3d Ed.). In support of this declaration, however, the text-writers above referred to cite cases in which the irregularity of the viewers or appraisers was attacked both in proceedings in the nature of a review and in proceedings in the nature of collateral

attacks.  We have examined the decided cases with considerable thoroughness.  In the following cases, wherein the proceeding was in the nature of a review of the action of the viewers, it was held, without discussion of what would be the effect of such irregularity upon collateral attack, that the failure to take the oath was such an irregularity as required the report to be set aside: *Cambria Street,* 75 Pa. 357; *Latah County v. Hasfurther,* 12 Idaho, 797, 88 Pac. 433; *Frith v. Justices of Inferior Court,* 30 Ga. 723; *State et al. v. Mayor and Alderman of City of Paterson,* 37 N. J. Law, 409; *State et al. v. Perth Amboy,* 38 N. J. Law, 425; *Hendrickson v. Point Pleasant,* 65 N. J. Law, 535, 47 Atl. 465.

In the following cases the validity of the proceeding was attacked collaterally, and the rule announced by the court sometimes without discussing the character of the proceeding, was that the failure to take the oath as prescribed by the statute renders the proceeding void: *Merritt et al. v. Village of Portchester et al.,* 71 N. Y. 309, 27 Am. Rep. 47; *Brevoort v. City of Brooklyn,* 89 N. Y. 128; *Shattuck et al. v. Bascom,* 105 N. Y. 39, 12 N. E. 283; *Wheeler et al. v. City of Chicago,* 57 Ill. 415; *Crossett v. Owens et al.,* 110 Ill. 378; *Hentig v. Gilmore,* 33 Kan. 234, 6 Pac. 304.

On the other hand, some of the cases have held that failure to take the oath is not such an irregularity as to render the assessment void on collateral attack.  *Trinity College v. City of Hartford,* 32 Conn. 452; *Caskey v. City of Greensburgh et al.,* 78 Ind. 233; *Walker et al. v. People ex rel. Kochersperger,* 169 Ill. 473, 48 N. E. 694; In the Matter of the *Petition of Kendall,* 85 N. Y. 302.  The decision in the last-mentioned case was reached without criticism or referring to *Merritt et al. v. Village of Portchester, et al., supra,* decided by the same court in which a contrary doctrine was announced.  Such is also true of *Walker et al. v. People ex rel. Kochersperger, supra,* in which no reference is

made to either *Wheeler et al. v. City of Chicago, supra,* or *Crossett v. Owens et al., supra,* from the same state. In *Caskey v. City of Greensburgh, supra,* In the *Matter of the Petition of Kendall, supra,* and in *Trinity College v. City of Hartford, supra,* the action of the viewers was sustained upon the ground that they are *de facto* officers; and that the validity of their acts cannot be called into question in a suit to which the viewers are not parties.

In the following cases from a decision of the viewers it was held on appeal without deciding whether the question could be raised in a collateral attack, that their acts would not be set aside, where the complaining parties had notice of the time and place of the hearing on the viewers' report and proceeded to such hearing without objection or exception to their action upon the ground that the oath had not been taken: *Patton v. Clark,* 9 Yerg. (Tenn.) 268; *Petition of Gilford,* 25 N. H. 124; *Inhabitants of Raymond v. County Commissioners of Cumberland County,* 63 Me. 110.

Observing the rule of strict construction, always applicable to a statute that takes private property for public use, or that imposes taxes upon property, we think that this requirement of the statute is primarily made does nothing to waive such irregularity, failure to take the oath renders the proceeding void. the statute should be held mandatory to the extent, at least, that, where the property owner for whose benefit the requirement of

The appeal provided by the statute affords a remedy for errors of the viewers in making the assessment of damages for property taken or injured and in the apportionment of benefits for which the tax is assessed against the property. But the viewers are charged with other duties, the performance of which is not subject to review by appeal, and for which any irregularity or misconduct of the viewers cannot be corrected by resort to the appeal the statute allows. They are charged with the duty and are authorized to locate the proposed improvement; they may vary

its location from that described in the petition; they determine
its dimensions and form; what disposition shall be made of the
excavated earth; they determine the manner and time in which
the improvements shall be made and completed, and let the con-
tracts therefor. In the discharge of all these duties, it was in-
tended by the statute that the viewers should act under the
influence of a solemn oath laid upon their consciences to discharge
such duties, including the assessment of damages and apportion-
ment of benefits, faithfully and impartially. To disregard the
requirements of the statute would be to encourage a laxity in the
discharge of official duties and endanger the rights of parties
whose property the statute authorizes to be taken against their
will for public purposes. We do not here undertake to decide
whether, if the property owners, with knowledge of the failure of
the viewers to take such oath, with notice of the hearing and
opportunity to be heard, or after appearing at the hearing with-
out notice, made no objections to such irregularity, they would
not thereby waive the requirements of the statute designed for
their benefit; but, under the facts alleged in this position, we
hold that the failure to take the oath renders the proceeding
invalid.

Counsel for defendants urge that the remedy for injunction
will not lie, because the assessment of benefits has already been
made and the same taxed against the land of the property owners
of the district. This contention requires no lengthy discussion.
Under the rule announced in *Marlow et al. v. School District
No. 4, Murray County, et al.,* 29 Okla. 304, 116 Pac. 797, and
supported by the authorities from this jurisdiction therein cited,
this contention cannot be sustained. In that case it was said:

"Equity has jurisdiction to prevent public officers and boards
from letting or carrying out unauthorized and illegal contracts
for public buildings, bridges, and other improvements, when such
actions may cause the levy of illegal taxes, the expenditure of
public funds in an improper manner, or a complication of the
public business that will bring about many actions at law."

It is true that, by the assessment of the benefits against the land of plaintiffs, a cloud upon their title has already been created; but these assessments are made for the purpose of paying bonds yet to be issued to pay for the construction of the ditch, the construction of which is yet to be contracted for. The bonds, when issued as provided by the statute, are to be recorded. The assessments made against the property of plaintiffs and now constituting a cloud upon their titles are for the sole purpose of paying the bonds about to be issued. If the bonds are never issued, the construction of the ditch never contracted for, it would follow that these assessments could not be collected; and, while acts have already been taken that cloud the title of plaintiffs, they are but the initiatory steps; and the issuance of the bonds and the construction of the ditch under a contract made by defendants in error would but further complicate the cloud upon their title, and give to the assessments made stronger appearances of validity.

For the foregoing reasons, we are of the opinion that the petition states a cause of action; and the judgment of the trial court is accordingly reversed, and the cause remanded.

All the Justices concur.

### On Rehearing.

PER CURIAM. On rehearing our attention is called to the fact that we assumed in the foregoing opinion that the notice mentioned in the second section of the syllabus was not given, or, to speak precisely, that there was an entire absence of such notice, whereas, it is contended some notice was given, as disclosed by the allegations of the petition; that at most such notice was irregular only and not void; that the commissioner in acting upon it passed upon its validity and declared it valid as affording due process of law; and, as no appeal is allowed by statute from their adjudication of its validity, that their judgment was final. Pertaining to this notice, the petition states:

"* * * That the proceedings under which the said defendants are proceeding to act in the premises is illegal and void because the notice issued by the defendants of its intention to construct said ditch was not issued in compliance with the law and is void, and because the said notice was never served upon these plaintiffs as required by the laws of the state of Oklahoma, and because such notice does not contain in proper columns a tabulated description of every lot or parcel of land that would be affected by the purported improvement, and because said notice was not published for four weeks, as required by law."

Whether the allegation that the proceedings are void because the notice in question "was not issued in compliance with the law and is void, and because the notice was never served upon these plaintiffs as required by the laws of the state," are mere conclusions of law not admitted by the demurrer, we need not say; but true it is that, construed with a view to substantial justice, the pleading on closer inspection does fairly imply that a notice was given, and the only question for us to decide is whether that notice, which does not contain, as charged in the petition and admitted on demurrer, "in proper columns a tabulated description of every lot or parcel of land that wuold be affected by the purported improvement," omits such material matters required by statute as to render the notice void, and hence fails to afford due process of law. For the reason that the same fails to comply with the statute, the notice is not merely irregular, but void. Referring to this notice, Comp. Laws 1909, sec. 3052, requires:

"Such notice shall contain in appropriate columns a tabulated description * * * of every lot or parcel of land that will be affected by the proposed improvements. * * *"

In *Merritt et al. v. Village of Portchester et al.,* 71 N. Y. 309, 27 Am. Rep. 47, the general rule was announced that:

"A statute delegating power to charge the property of individuals with the expense of local improvements must be strictly pursued, and any departure in substance from the formula prescribed by statute vitiates proceedings under it."

In *Hopkins v. Mason,* 42 How. Prac. (N. Y.) 115, the act required the commissioners to publicm a notice addressed to the owners of land within the assessment district. The notict actually published was not addressed to anybody. This was held to be a noncompliance with a jurisdictional requirement.

In *Bank of British Columbia v. City of Portland,* 41 Or. 1, 67 Pac. 1112, the fourth section of the syllabus reads:

"Under Portland City Charter, sec. 128 (Laws 1898, p. 150), providing that the city engineer shall post notices, headed, 'Notice of Street Work,' in letters of not less than an inch in length, of the fact of the council's passage of a resolution of an intention to make street improvements, together with the character of the proposed improvement, and the time within which objections thereto may be made, a notice headed, 'Notice of Street Work,' in three-quarter inch type, is insufficient to confer upon the council jurisdiction to make the proposed amendment."

Concerning which the court said:

"* * * Now, it is prescribed how the notice shall be headed; that is to say, it shall be in letters not less than one inch in length. The direction is absolutely inhibitive of the use of letters of less dimension, and there is no room for saying that the use of a three-quarter inch type is a substantial compliance, because the Legislature, by express terms, requires a literal compliance. Such a rendition and execution of the requirement of the charter may seem technical, but it is not for the courts to declare than a nonessential which the Legislature has prescribed and in language that cannot be misinterpreted, or misunderstood, to be an essential. In this connection a further reference to authorities will not be amiss. Mr. Elliott, in his work on Roads and Streets (2d Ed.) sec. 324, says: 'The form of the notice is not important unless the statute expressly prescribes a particular form, but the substance of the notice must, in all essential features, be such as the statute requires.' So in *Wilson v. Inhabitants of City of Trenton,* 53 N. J. Law, 645, 647, 23 Atl. 278, 279, 16 L. R. A. 200, the court says: 'The Legislature may prescribe how much notice may be given. The mode prescribed must be strictly followed, and the proceedings must show the

prescribed notice.' And again, in *Harbeck v. City of Toledo,* 11 Ohio St. 219, 224: 'The court has no discretion as to the form of the notice. It must contain, or be accompanied by, a copy of the application, and it is idle to speculate as to the object of the enactment, and what would be sufficient compliance with its spirit, rather than its letter. The language of the act is clear, distinct, and unambiguous—a copy of the application must be published with the notice of the time and place—and we are not at liberty to disregard its express requirement, or to fritter it away by mere rules of construction. If a municipal corporation avails itself of the statute to take private property without the owner's consent, it must, as we have seen, strictly follow its provisoins.' See, also, *State v. Shreeve,* 15 N. J. Law, 57; *White v. Bayonne,* 49 N. J. Law, 311, 8 Atl. 295; *Austin v. Allen,* 6 Wis. 134. What notice shall be given, and the manner in which it shall be gievn, are matters within legislative discretion; and the courts cannot inquire as to the reasons which prompted its action, or do less than to require an observance of its mandates, unless contrary to the fundamental law."

In *State v. Mayor, etc., of Bayonne,* 51 N. J. Law, 428, 17 Atl. 971, the certiorari brought up the proceedings taken by the city of Bayonne for the opening of a certain street. The court said:

"* * * The next objections are against the notices given of the filing of the preliminary map and report of the commissioners. These notices clearly failed to comply either with the charter (section 58, *ubi supra*) or with the general law (Revision, p. 711). They did not contain a general description of the land taken, or the land assessed, or of the streets or section thereof, included in the assessment; that merely referred to the map on file as showing each lot or parcel of land bounded by the improvement. It is true that, in response to these notices, the prosecutor appeared; but that appearance was for the purpose of objecting to the proceedings on this ground, among others. Such an appearance is no waiver of the objections. *State v. Jersey City,* 26 N. J. Law, 444; *State v. Perth Amboy,* 29 N. J. Law, 259; *State v. Commissioners,* 41 N. J. Law, 83. For this reason the notice and all subsequent proceedings are illegal, and must be set aside."

See, also, *Wilson v. City of Trenton,* 53 N. J. Law, 645, 23 Atl. 278, 16 L. R. A. 200; *Barber Asphalt Pav. Co. v. Edgerton,* 125 Ind. 455, 25 N. E. 436; *In re Palmer,* 138 Mich. 36, 102 N. W. 996; Page & Jones, Taxation by Assessment, secs. 750, 755; *Core v. Smith,* 23 Okla. 909, 102 Pac. 114.

We are therefore of opinion that the notice fails to comply with the statutory requirements in a material particular, and for that reason is void, and, being void, fails to afford due process of law.

We therefore adhere to the opinion as handed down except as modified hereby.

All the Justices concur, except LOOFBOURROW, J., absent and not participating.