IN THE

# SUPREME COURT

OF

# OREGON.

Argued 25 February; decided 17 March, 1902.

## BANK OF COLUMBIA v. PORTLAND.

[67 Pac. 1112.]

GENERAL RULES OF STATUTORY CONSTRUCTION.

1. Proceedings not according to the course of the common law, by which the title of property may be devested, must be conducted with at least a full compliance with the statute; and where a special power is granted, and a mode prescribed for its exercise that mode must be essentially followed or the proceedings will be void. The acts required by the prescribed mode are conditions precedent to a valid exercise of the power conferred.

STREETS—REQUIRED NOTICE OF INTENTION TO IMPROVE.

2. Under a city charter authorizing the common council to improve the streets, and requiring that before any street improvement shall be made the council "shall pass a resolution of intention so to do, and describing the work or improvement" (Portland Charter, 1898, §§ 127, 128; Laws, 1898, pp. 101, 150, 151, §§ 127, 128), a resolution "that notice be given that the Common Council of the City of Portland propose to improve" certain streets, followed by a specification of how the work should be done, is a sufficient though not very lucid resolution of intention to improve.

STREETS—PUBLISHED NOTICE OF PROPOSED IMPROVEMENT.

3. Under a city charter prescribing that before any street improvement shall be made the resolution declaring the intention to improve shall be published, etc. (Portland Charter, 1898, § 128; Laws, 1898, pp. 101, 150, § 128), a publication: "Notice is hereby given that the Common Council of the City of Portland propose to improve" stated streets in a specified manner is sufficient.

MEANING OF CONSECUTIVE PUBLICATION—STATUTES.

4. Under the provision of the act of 1899, relating to publication of notices (Laws, 1899, p. 233, § 1), a publication is "consecutive" if it is published on

successive days, Sundays excepted; thus, a notice required to be published for ten consecutive days in a daily paper is sufficiently published when it has appeared in each successive issue from the fourth to the fifteenth of a month in a paper issued every day except Sunday.

STREETS—POSTED NOTICES OF PROPOSED IMPROVEMENT.

5. Under a statute requiring a certain notice to be posted in a specified place, "headed in letters not less than" a prescribed size (Portland Charter, 1898, § 128; Laws, 1898, pp. 101, 151, § 128), the letters used in the heading absolutely must be at least as large as the size required, or jurisdiction will not be acquired to proceed.

STREETS—REMONSTRANCE NOT A WAIVER.

6. The filing of remonstrances by abutting property owners against a proposed street improvement does not constitute a waiver of the requirements of the city charter with respect to the manner and form of giving of notices of the proposed improvement, such requirements being conditions precedent to the city's jurisdiction to lawfully make the improvement.

POWERS OF DEPUTY OFFICER—AMENDING RETURN.

7. Where a city charter provided for a city engineer and deputies clothed with the powers of the engineer, a deputy engineer posting notices of a proposed street improvement required to be posted by the city engineer may make the required affidavit of such posting; and may, under appropriate circumcumstances, amend a return to make it speak the truth.

From Multnomah: JOHN B. CLELAND, Judge.

Suit by the Bank of British Columbia and others against the City of Portland and another. From a decree for defendants, plaintiffs appeal.     REVERSED.

For appellants there was a brief and an oral argument by *Mr. Parrish L. Willis.*

For respondents there was a brief over the names of *Joel M. Long,* City Attorney, and *Ralph R. Duniway,* with an oral argument by *Mr. Duniway.*

MR. JUSTICE WOLVERTON delivered the opinion.

This is a suit to enjoin the collection of assessments for a street improvement, based upon the alleged nonobservance of certain charter regulations in doing the work. In the view we have taken of the controversy, it will be necessary to discuss such questions only as may pertain to the notice attending the resolution of intention to make the improvement. On May 2,

1899, the common council adopted the following: "Resolved, That notice be given that the Common Council of the City of Portland, Oregon, propose to improve Tenth Street from the north line of Hoyt Street to a point 20 feet north of the south line of Northrup Street," etc., specifying the manner in which the work should be done; and, on the 4th, caused a notice to be published in the *Evening Telegram,* and in each succeeding and consecutive issue thereof, to and inclusive of the 15th day of that month, which runs as follows:

"PROPOSED IMPROVEMENT OF TENTH STREET.

"Notice is hereby given that the Common Council of the City of Portland, Or., proposes to improve Tenth Street, etc. (specifying the manner in which the work should be done as in the resolution). Remonstrance against the above improvement can be filed on or before the 26th day of May, 1899."

On the fifth, A. M. Shannon, deputy city engineer, posted a notice at each end of the proposed improvement, headed, "Notice of Street Work," in letters about three fourths of an inch in length, stating the fact of the passage of the resolution of intention to improve, its date, the character of the work or improvement proposed, and the time within which objection or remonstrance might be made thereto, and filed his affidavit of the posting with the auditor on the same day. This (affidavit) was admittedly defective, and, to correct which, he filed another on December 20, 1900, after the suit had been instituted, in tenor following:

"OFFICE OF THE CITY ENGINEER,
Portland, Oregon, December, 1900.

I, A. M. Shannon, Deputy City Engineer of the City of Portland, after having first been duly sworn, depose and say that notice of the contemplated improvement of Tenth Street, from N. line of Hoyt Street to a point 20 ft. N. of S. line of Northrup St., provided for in the resolution of the common council passed on the 2d day of May, 1899, a true copy of said notice, marked 'Exhibit A,' is attached hereto and made a part hereof, was posted by me, in compliance with section 128 of the city charter, on the 5th day of May, 1899,

at the following places: S. E. corner of Northrup and Tenth streets, and N. W. corner of Hoyt and Tenth streets. I make this amended proof to correct a clerical mistake in proof made May 5, 1899.     A. M. SHANNON, Deputy City Engineer.

Subscribed and sworn to before me this 20th day of December, 1900.                    THOS. C. DEVLIN, Auditor,
                                         By W. L. GOULD, Deputy.''

Prior to the 26th the plaintiffs, except the University Land Co., all of whom are abutting property owners, filed a remonstrance against the improvement, notwithstanding which it was ordered, and the assessments finally made.

Now it is contended (1) that the resolution of intention is not such as the charter requires; (2) that the published notice thereof was insufficient; (3) that it was not published for the requisite time, and in the manner prescribed; (4) that the posted notice of such work was not headed in letters of an inch in length; and (5) that no sufficient affidavit was made of the posting. Of these in their order.

1. By section 127 of the city charter of Portland (Laws, 1898 pp. 101, 105), the common council is authorized and empowered to improve the streets and alleys of the city; but section 128 prescribes that, before any work is done or improvement made as authorized by section 127, the common council ''shall pass a resolution of intention so to do, and describing the work or improvement, which resolution shall be posted conspicuously for ten days in the office of the auditor, and shall be published for ten consecutive days in a daily paper published and circulated in the City of Portland. The city engineer shall, within three days from first publication of the notice herein provided for, also cause (the same) to be conspicuously posted at each end of the line of said contemplated work or improvement. Said notice shall be headed 'Notice of Street Work,' in letters not less than one inch in length, and shall, in legible characters, state the fact of the passage of the resolution aforesaid, its date, and briefly the character of the work or improvement proposed, and the time within which written objection or remonstrance may be made thereto. The engineer shall file with the auditor an affidavit of the posting of

said notices, stating therein the date and place where the same have been posted.'' Proceedings in derogation of the common law, by which individuals and citizens may be devested of title to property, must be conducted in substantial if not strict compliance with the requirements of the statute, and every requisite designed for their protection and benefit must be observed in all its essential parts. This is a general rule so well settled that it requires no further elucidation. Another familiar principle is that where a power is granted by the legislature, and a mode prescribed for the exercise thereof, the mode becomes the measure of the power, and any essential deviation therefrom will render the act void and ineffectual. The acts required by the mode prescribed become conditions precedent to a valid exercise of the power, and, without their observance, all subsequent proceedings are without competent authority and wholly unavailable for the consummation of the ultimate purpose: *Springfield Mill. Co.* v. *Lane County,* 5 Or. 265; 15 Am. & Eng. Ency. Law (1 ed.), 1042; *Gilman* v. *City of Milwaukee,* 61 Wis. 588 (21 N. W. 640); *Zottman* v. *San Francisco,* 20 Cal. 96 (81 Am. Dec. 96); *First Presbyterian Church* v. *City of Ft. Wayne,* 36 Ind. 338 (10 Am. Dec. 35); *Hewes* v. *Reis,* 40 Cal. 255; *Merritt* v. *Village of Portchester,* 71 N. Y. 309 (27 Am. Rep. 47). By the very wording of section 128, the requirements thereof are made conditions precedent to the exercise of the power accorded the common council to improve streets and alleys, and, by the settled canons of interpretation, they should receive a strict construction. By this is meant that every requirement must have been observed and complied with in substance, and where the statute, by positive language, inhibits any deviation from the particular mode pointed out, it must be literally fulfilled, as none other can subserve the purpose of the legislature.

2. The especial criticism of the resolution is that it is not within itself a resolution of intention to improve, but that it was thereby determined and declared that a notice be given of the common council's purpose to improve. The purpose or intention is manifest from the resolution, while it may be

conceded that the wording is somewhat inapt and ambiguous.

3. The trouble arises from an attempt to direct that notice thereof be given at the same time, but it does not, in our opinion, destroy the utility of the resolution. The posting and publication of the resolution were matters to be observed after its adoption, and it was not essential that the common council should direct that these things be done in the resolution itself or at all. The charter does this, and nothing more is required. It is the resolution that must be posted in the office of the auditor and published, not another notice. Then it is designed that the posting and publication shall impart notice; so that the published notice, so-called, was sufficient, being practically a publication of the resolution adopted.

4. As to the time of publication, the resolution was inserted in the issue of the *Evening Telegram* of May 4th, and was published in each successive issue to and inclusive of May 15th (1899). The paper was issued every day except Sundays, and the charter requires a publication for ten consecutive days. From the 4th to 15th two Sundays intervened, and there was no publication, of course, upon these days; and the inquiry presented is, was there a publication for ten consecutive days, within the meaning of the charter? Construed within itself, we should say, ''No;'' but there was enacted in 1899 a law to cure defective publications of notice, and to declare what shall be a sufficient publication thereof, which provides that, where a notice is required by any general or special law to be published in a daily paper for successive or consecutive days, it shall be a full compliance, within the meaning of the law, if such notice is, or should have been, published on the week days only: Laws, 1899, p. 233. This we hold to be curative of the objection made, as it pertains to the length of time the resolution was published.

5. The further requirement of section 128 is that the city engineer shall, within three days from the first publication of the notice, which evidently means the resolution, also cause ''(the same)'' to be conspicuously posted, etc. It will be noted that the words ''the same'' are contained in parentheses,

denoting an interpolation. They are not in the original bill as introduced and passed, as we have ascertained by an inspection thereof. The clause, however, does not make sense without some interpolation, as there was evidently an omission by the draftsman. It would be much more in consonance with the context of the whole section if the words "a notice" were inserted instead. This would relieve the section of an apparent incongruity brought about by the indiscriminate use of the terms "resolution" and "notice." At any rate, it is plain that the notice required to be headed, "Notice of Street Work," does not refer to the resolution, as the former is required to state the fact of the passage of the resolution "aforesaid" (another document), and to state further the character of the work or improvement proposed, whereas the resolution must describe the work of improvement; thus showing an intendment that the two documents should be distinct one from the other. Now, it is prescribed how the notice shall be headed; that is to say, it shall be in letters not less than one inch in length. The direction is absolutely inhibitive of the use of letters of any less dimension, and there is no room for saying that the use of a three-quarter inch type is a substantial compliance, because the legislature, by express terms, requires a literal compliance. Such a rendition and execution of the requirement of the charter may seem technical, but it is not for the courts to declare that a nonessential which the legislature has prescribed, and in language that cannot be misinterpreted or misunderstood, to be an essential. In this connection a further reference to the authorities will not be amiss. Mr. Elliott, in his work on Roads and Streets (2 ed.), § 324, says: "The form of the notice is not important unless the statute expressly prescribes a particular form, but the substance of the notice must, in all essential features, be such as the statute requires." So, in *Wilson* v. *Inhabitants of Trenton,* 53 N. J. Law, 645, 647 (23 Atl. 278, 279, 16 L. R. A. 200), the court say: "The legislature may prescribe how such notice may be given. The mode prescribed must be strictly followed, and the proceedings must show the prescribed notice."

And again, in *Harbeck* v. *City of Toledo,* 11 Ohio St. 219, 224:
"The court has no discretion as to the form of the notice. It
must contain, or be accompanied by, a copy of the application,
and it is idle to speculate as to the object of the enactment, and
what would be a sufficient compliance with its spirit, rather
than its letter. The language of the act is clear, distinct, and
unambiguous,—a copy of the application must be published
with the notice of the time and place; and we are not at liberty
to disregard its express requirement, or to fritter it away by
mere rules of construction. If a municipal corporation avails
itself of the statute to take private property without the
owner's consent, it must, as we have seen, strictly follow its
provisions." See, also, *State* v. *Shreeve,* 15 N. J. Law, 57;
*White* v. *Bayonne,* 49 N. J. Law, 311 (8 Atl. 295); *Austin* v.
*Allen,* 6 Wis. 134. What notice should be given, and the man-
ner in which it shall be given, are matters within legislative
discretion; and the courts cannot inquire as to the reasons
which prompted its action, or do less than to require an ob-
servance of its mandates, unless contrary to the fundamental
law.

6. Nor was there a waiver of the compliance on the part of
the common council by those of the plaintiffs who filed a re-
monstrance against the improvement. The act of giving no-
tice in the manner prescribed was a condition precedent to the
acquirement of jurisdiction of the subject-matter, and the im-
provement could not be lawfully made without it: *Ladd* v.
*Spencer,* 23 Or. 193 (30 Pac. 474); *Strout* v. *Portland,* 26 Or.
294 (38 Pac. 126); *Smith* v. *Minto,* 30 Or. 351 (48 Pac. 166).

7. The engineer's affidavit of the posting states the date
and places where the notices were posted, and fulfills the re-
quirement of the charter. That it was made by the deputy
city engineer is not objectionable, as the engineer may, under
the charter, employ one or more deputies, who are clothed with
like powers as the principal: Section 53, City Charter (Laws,
1898, pp. 101, 122, § 53). The later affidavit was but an
amendment of proof, and a correction of the former.

The objections, therefore, to the affidavit are not well taken;

but, for the omission in posting a proper notice at each end of the line of the proposed improvement, the decree of the trial court will be reversed, and one here entered restraining the collection of the assessments.                    REVERSED.