## ALLEY v. CITY OF MUSKOGEE et al.

No. 5502.   Opinion Filed March 14, 1916.

(156 Pac. 315.)

1.    CONSTITUTIONAL LAW—Municipal Corporations—Due Process—Street Improvements. Section 723, Comp. Laws 1909, conferring upon the mayor and council of cities of the first class authority, whenever they shall deem it necessary, to grade, pave, macadamize, gutter, curb, drain or otherwise improve any street,

avenue, alley or lane, or any part thereof, within the limits of the city, for which a special tax is to be levied, by resolution to declare such work or improvement necessary to be done, which resolution shall be published in six consecutive issues of a weekly newspaper published and having a general circulation within such city, provides for a sufficient notice to the owners· of property sought to be charged with the cost of the improvements, and is therefore not repugnant to section 7, art. 2, Okla. Constitution, or to the Fourteenth Amendment to the federal Constitution.

2. **MUNICIPAL CORPORATIONS—Street Improvements—Notice to Property Owners—Sufficiency.** The due publication of the resolution of necessity of the mayor and city council, provided for in said section 723, together with the publication of the notice given by the city clerk required by section 726, Comp. Laws 1909, as exhibited by the petition, was sufficient notice to property owners affected thereby, of the proposed street improvements.

3. **NEWSPAPERS—Notice—Publication in "Daily Newspapers."** A newspaper published on each day of the week except Monday is a daily newspaper within the meaning of sections 723 and 726, Comp. Laws 1909, providing, respectively, for the publication of the resolutions of the mayor and council, and notice of hearing by the city clerk, in street improvement work.

4. **MUNICIPAL CORPORATIONS—Street Improvements—Resolutions—Notice—Publication.** Section 723 requires that the resolution "be published in six consecutive issues of a daily newspaper," while section 726 provides that notice of the session of the mayor and council "shall be published by the city clerk in five successive issues of a daily newspaper." Section 730 provides that the publication of all notices in a daily newspaper called for in the act shall be the number of days therein specified, exclusive of Sundays and legal holidays. **Held,** a compliance with the statute, where the resolution and notice were published, respectively, in six and five consecutive issues of a newspaper published each day in the week except Monday, and omitting the Sunday edition.

(Syllabus by the Court.)

*Error from Superior Court, Muskogee County;*
*Farrar L. McCain, Judge.*

Action by E. C. Alley against the City of Muskogee and others. Judgment for defendants, and plaintiff brings error. Affirmed.

*Charles A. Cook,* for plaintiff in error.

*S. V. O'Hare* and *James C. Davis,* for defendants in error.

*W. L. Cunningham, amicus curiae.*

SHARP, J.   On the 19th day of April, 1913, plaintiff instituted a suit in the superior court of Muskogee county, to enjoin the levy and collection of taxes upon certain lots within street improvement district No. 129 of the city of Muskogee, which taxes were at the time about to be levied and collected to pay for said street improvement.   Plaintiff's petition set forth five separate causes of action, to each of which a demurrer was filed.   A hearing on the issues of law being had, the demurrers to the first, second, and fourth causes of action were sustained, and the demurrers to the third and fifth causes of action were overruled.   From the court's action in sustaining the demurrers, plaintiff brings error.

Three points of attack are directed at the judgment of the trial court:   (1) That the statute under which the special assessment was levied and proceedings had is void, in that the same is in contravention of article 2, sec. 7, of the state Constitution, and the Fourteenth Amendment to the federal Constitution; (2) that the publication of the resolution as authorized by section 723, Comp. Laws 1909, was not sufficient to confer jurisdiction upon the mayor and council to act in the premises; (3) that the publication of the resolution and the subsequent notice of the city clerk were not published, respectively, for six and five consecutive issues of a daily paper as required by statute.

At the outset it may be said that, like general taxes, special assessments are enforced proportional contribu-

tions, imposed, not at regularly recurring periods to provide a continuous revenue, but, instead, are levied only occasionally, as required; they are imposed, not upon the general body of the citizens, but upon a limited class of persons who are interested in a local improvement, and who are assumed to be benefited by the improvement to the extent of the assessment; they are imposed and collected as an equivalent, actual or presumed, for the benefit, and to pay the cost of the improvement. Special assessments proceed upon the theory that when a local improvement enhances the value of neighboring property, it is reasonable and competent for the Legislature to provide that such property shall pay for the improvement. In a general levy of taxes, a contribution is exacted in return for the general benefits of government; in special assessments, the contribution is exacted because the property of the taxpayer is considered by the Legislature to be benefited over and beyond the general benefit of the community.

In Dillon on Municipal Corporations, sec. 1432, it is said that the question whether the Constitutions of the various states contain provisions which prohibit the Legislature from assessing the expense of local improvements upon property in the vicinity has given rise to numerous decisions; that in the leading case (*People v. Brooklyn*, 4 N. Y. 419, 55 Am. Dec. 266) it was held, upon great consideration, in an opinion the reasoning and conclusion of which have almost everywhere been adopted, and which is regarded as historically and legally sound, that the ordinary and usual legislation of such character does not contravene the constitutional provision that:

"No person shall be deprived of life, liberty or property, without due process of law; nor shall private property be taken for public use without just compensation."

The above provision is identical with section 7, art. 2, of the Oklahoma Constitution, of which it is said the statute is violative. It may be regarded as definitely settled that the Legislature of a state may create or authorize the creation of special improvement or taxing districts, and charge the costs of a local improvement, in whole or in part, upon the property in such districts, or according to valuation or superficial area of frontage, without violating the Fourteenth Amendment to the federal Constitution; and that the whole expense of paving or of improving a street or highway may be assessed by a municipality pursuant to statutory authority, upon the lands abutting upon the street or highway so improved, in proportion to the feet frontage of such lands, without providing for a judicial inquiry into the value of such lands and the benefit actually to accrue to them by the proposed improvement. Dillon on Mun. Corp., sec. 1436; *French v. Barber Asphalt Pav. Co.,* 181 U. S. 324, 21 Sup. Ct. 625, 45 L. Ed. 879; *Tonawanda v. Lyon,* 181 U. S. 389, 21 Sup. Ct. 609, 45 L. Ed. 908; *Webster v. Fargo,* 181 U. S. 394, 21 Sup. Ct. 623, 45 L. Ed. 912; *Shultise v. Town of Taloga,* 42 Okla. 65, 140 Pac. 1190.

Section 723, Comp. Laws 1909, contains an express delegation of power to the mayor and council of cities of the first class, whenever they shall deem it necessary, to grade, pave, macadamize, gutter, curb, drain or otherwise improve any street, avenue, alley, or lane, or any part thereof, within the limits of the city for which the special tax is to be levied; to, by resolution, declare such work or improvement necessary to be done, providing that thereupon such resolution shall be published as therein specified, and, if the owners of more than one-half in area of the lands liable for assessment to pay for such improvement of

any such highway shall not within 15 days after the last publication of such resolution file with the clerk of said city their protest in writing against such improvement, then the mayor and council shall have power to cause such improvement to be made and to contract therefor, and to levy assessments as therein provided; and that any number of streets, avenues, lanes, alleys, or other public places or parts thereof, to be so improved, may be included in one resolution. The petition charges the adoption, approval, and publication of the resolution declaring the necessity for the work or improvement to be done, and in which were included certain lots belonging to plaintiff, situate, abutting, and fronting on South B street, and within the territory described in the resolution. It is not claimed that there was a failure to comply with the requirements of the statute, prescribing the acts and things necessary to be done in the levying of a special assessment for street improvement work, except that the resolution and subsequent notice were not published in sufficient consecutive issues of a daily paper, within the meaning of the statute. On the other hand, the first ground of attack is that the statute authorizing the publication of the resolution is void and without effect, in that it provides for no sufficient notice to the owner of the property sought to be charged with the cost of the improvement. In principle, the question is not a new one in this jurisdiction. In *City of Perry v. Davis et al.*, 18 Okla. 427, 90 Pac. 865, in a well-considered opinion, article 1, c. 6 of the Session Laws of 1903, under which a tax for the construction of the sewer in that case was levied, was held not unconstitutional by reason of the fact that it failed to provide for notice of the construction of the sewer to property holders, other than the notice imparted by the passing

of the resolution and other proceedings designated in the act, and to give them an opportunity to be heard, before the construction of the sewer. The doctrine announced in that case was followed in *Lonsinger et al v. Ponca City,* 27 Okla. 397, 112 Pac. 1006, where a similar character of attack upon the act was made. See, also, *Kerker et al. v. Bocher et al.,* 20 Okla. 729, 95 Pac. 981. The resolution named the streets and avenues proposed to be graded and otherwise improved; stated the point of beginning and ending; informed all owners of land liable to assessment for such improvement that within 15 days after July 20, 1910, they could file with the city clerk their protests in writing against said improvement upon such streets, avenues, and boulevards, and that upon a failure of the owners of more than one-half of the area liable to assessment to pay for the said improvement of said streets, avenues, and boulevards, to file their protests in writing, then the mayor and council should have the power to cause such improvements to be made, and contract therefor, and levy assessments as provided by law. The further notice given by the city clerk required by section 726 of the statutes stated that the board of appraisers appointed by the city council to appraise and apportion the benefits resulting from the grading, paving, curbing, guttering, draining, and otherwise improving that portion of South B street, extending from the north line of Frankfort avenue to the south city limits of said city of Muskogee, constituting street improvement district No. 129 in said city, to the lots and tracts of land liable to be assessed to pay the cost of said improvement, had made an appraisement and apportionment and had returned a written report of the same, which was then on file in the office of city clerk of said city, and could be examined by all per-

sons interested therein; and gave further notice that the mayor and council of said city would hold a session in the council chamber of the city hall of such city, at 10 o'clock a. m., on the 21st day of November, 1911, at which time and place the mayor and council would hear and consider any and all complaints or objections presented to them concerning such appraisement and apportionment as to any of the lots or tracts of land to be assessed to pay the cost of said improvement. Both the resolution and notice appear to have been prepared in strict conformity to the statute, and they were sufficient to notify the owners of property in the improvement district, both of the proposed work of improvement and the appraisement and apportionment made to the owners of the affected lots by the board of appraisers. *Wight v. Davidson,* 181 U. S. 371, 21 Sup. Ct. 616, 45 L. Ed. 900.

Plaintiff's legal rights, as the owner of lots abutting on one of the streets sought to be improved, were not unconstitutionally impaired for failure on the part of the mayor and city council to give him personal notice of the action of the city council when having under consideration the resolution of necessity or of its subsequent passage. Neither was it necessary to give said plaintiff and other owners of lots personal notice of the action of the board of appraisers, or of the hearing to be had thereon. The provisions of the statute authorizing notice by publication were sufficient. Construing the provision of the drainage statute, in regard to notice to property owners of the district (section 3052, Comp. Laws 1909), it was said in *Davis v. Board of Commissioners,* 45 Okla. 284, 137 Pac. 114:

"The statute in the case at bar provides for service of notice by publication, but does not provide for personal

service of such notice; and it is alleged in the petition that no personal notice was served. But the absence of provision for personal notice in the statute and the failure to give personal notice does not render the statute invalid and does not result in the proceeding denying to the property owners due process of law, for some other form of notice is provided and given, which fairly and reasonably apprises the property owners of the proceeding to assess their property and gives them an opportunity to be heard upon the merits of their objections to the assessment. Where the statute provides for notice by publication, that accomplishes the purpose, and it is not void as being in violation of the constitutional provision which prohibits the taking of property without due process of law"—citing *Bellingham Bay & British Columbia R. Co. v New Whatcom,* 172 U. S. 314, 19 Sup. Ct. 205, 43 L. Ed. 460; *Wight v. Davidson,* 181 U. S. 371, 21 Sup. Ct. 616, 45 L. Ed. 900; *Ballard v. Hunter,* 204 U. S. 241, 27 Sup. Ct. 261, 51 L. Ed. 461; *Ritter v. Drainage District No. 1,* 78 Ark. 580, 94 S. W. 711; Taxation by Assessment, Page & Jones, sec. 121.

In the earlier case of *Riley v. Carico,* 27 Okla. 33, 110 Pac. 738, it was held that notice by publication of an intention to form a drainage district, consisting of two consecutive insertions in a newspaper of general circulation in the county in which the land was located, was sufficient to constitute due process of law, and was not repugnant to section 24, art. 2 of the Constitution. Such we understand to be the general rule in the giving of notices of special assessment proceedings. As said by Page & Jones, Taxation by Assessment, sec. 760:

"The property owner has no constitutional right to personal service. If the statute provides for a service by publication of such a sort as fairly to amount to constructive service, and publication is had in compliance with the terms of the statute, the property owner receives sufficient notice and cannot attack the assessment proceedings on the

ground of want of notice. If by statute service by publication is specifically provided for, such service must ordinarily be made."

In neither the resolution nor the notice, given by the city clerk, is it necessary that the property owners be named. *Lent v. Tillson,* 72 Cal. 404, 14 Pac. 71; *Williams v. Vicelich,* 121 Cal. 314, 53 Pac. 807; *City of Ottawa v. Macy,* 20 Ill. 413; *Klein v. Tuhey,* 13 Ind. App. 74, 40 N. E. 144; *Huling v. Kaw Valley R. & I. Co.,* 130 U. S. 559, 9 Sup. Ct. 603, 32 L. Ed. 1045.

It is said in Page & Jones, Taxation by Assessment, sec. 751:

"In the absence of a statute specifically requiring it, it is not necessary that a notice be given to the property owners by name. It may be addressed generally to the owners of the land designated in a certain manner; as the owners of land abutting upon a specified part of the designated street; or to the property owners in sidewalk district No. 6."

Mr. Elliott, in his work on Roads and Streets (2d Ed.) sec. 324, says:

"The form of the notice is not important unless the statute expressly prescribes a particular form, but the substance of the notice must, in all essential features, be such as the statute requires."

So, in *Wilson v. Inhabitants of the City of Trenton,* 53 N. J. Law, 645, 23 Atl. 278, 279, 16 L. R. A. 200, the court says:

"The Legislature may prescribe how such a notice may be given. The mode prescribed must be strictly followed and the proceedings must show the prescribed notice."

What notice shall be given, and the manner in which it shall be given, are matters within legislative

discretion; and the courts cannot inquire as to the reason which prompted the Legislature's action, nor do less than require an observance of its mandates, unless contrary to the fundamental law.

What we have said lastly answers sufficiently the plaintiff in error's second assignment of error.

The resolution of necessity was published in the Muskogee Daily Phoenix in the issues of July 13, 14, 15, 16, 19 and 20, in the year 1910; the notice of the city clerk, in the issues of said paper published November 8, 9, 10, 11 and 14, 1911. It is urged that these publications were insufficient because not published in consecutive and successive issues of a daily newspaper. Section 730, Comp. Laws 1909, provides that the publication of all notices in a daily newspaper called for in the street improvement act, shall be for the number of days therein specified, exclusive of Sundays and legal holidays. July 17, 1910, and November 12, 1911, were Sundays, hence the publication of the resolution and notice in the issues of those days was not required. In *Weaver et al. v. City of Chickasha,* 36 Okla. 226, 128 Pac. 305, it was held that where the notice required by section 726, Comp. Laws 1909, fixing the time for hearing objections to the report of appraisers, was published in a daily newspaper of general circulation in the city on the 19th, 21st, 22nd, 23rd, 24th of June, 1909, the 20th being Sunday, on which day the paper was not published, that constituted a publication in "five successive issues," and was a sufficient compliance with the statute.

Counsel cite in support of their contention the following cases: *Haskell v. Bartlett,* 34 Cal. 281; *San Francisco v. McCain,* 50 Cal. 210; *Bank of British Columbia v. City*

*of Portland,* 41 Ore. 1, 67 Pac. 1112; *El Paso v. Ft. Dearborn Nat. Bank* (Tex. Civ. App.), 71 S. W. 799, 802. The California cases cited are clearly not in point. In the Oregon case it was required that the publication of the council's resolution of an intention to make certain street improvements be made in a daily paper for "ten consecutive days." It is said in the syllabus:

"Portland City Charter, section 128 (Laws 1898, p. 150), requires the publication of the council's resolution of an intention to make certain street improvements in a daily paper for 'ten consecutive days.' Laws 1899, p. 233, provides that, where a notice is required by law to be published in a daily paper for consecutive days, it shall be a compliance if such notice is published on the week days only. Held, that the publication of a notice of a proposed street improvement in each successive issue from May 4th to and including May 15th in a paper issued every day except Sunday is sufficient."

In the Texas case a trust deed authorized a sale thereunder on the publication of an advertisement for sale for ten consecutive days in some daily newspaper published· in a certain city. It was published for more than ten days continuously in the Daily Herald, which was in existence when the deed was made, as that paper was published. Two Sundays, however, were included in this period on which the daily was not published, though a publication known as the Sunday Herald was issued, made up of a reprint of matter which had appeared during the week. It was held that the publication was sufficient; the expression "ten consecutive days" being construed to mean an unbroken publication in the paper as published. In the brief of counsel for plaintiff in error, it is expressly admitted that the Muskogee Daily Phoenix at the time in question was pub-

9·—53

lished every day in the week, including Sunday, except on Monday. The statute providing for the publication of the resolution reads:

"* * * And such resolution shall be published in six consecutive issues of a daily newspaper * * * published and having a general circulation within such city." (Comp. Laws 1909, section 723.)

While the statute providing for the publication of the notice of the city clerk provides:

"* * * And notice of such session shall be published by the city clerk in five successive issues of a daily newspaper * . * * published and of general circulation in said city." (Section 726.)

It will be observed that the statute requires the publications to be made in consecutive or successive issues, and not on consecutive or successive days. A newspaper published on each day of the week except Monday is nevertheless a daily newspaper. *Richardson v. Tobin,* 45 Cal. 30. In *Fairhaven Pub. Co. v. City of Bellingham,* 51 Wash. 108, 98 Pac. 97, 16 Ann. Cas. 420, it was said that a newspaper published every day in the week, except Sundays and Mondays, was a "daily newspaper," within the provision of the city charter requiring the publication of legal advertising of the city in a daily paper printed and published in the city. In *Puget Sound Pub. Co. v. Times Ptg. Co.,* 33 Wash. 551, 74 Pac. 802, it was held that a newspaper may be a daily paper, though not published on Sunday or on legal holidays. In *Tribune Pub. Co. v. Duluth,* 45 Minn. 27, 47 N. W. 309, it was held that a newspaper printed and published six days consecutively each week, one of which being Sunday, was a daily newspaper within the intent and meaning of the Laws of 1889, c. 47.

The statute providing that Sunday publications should not be considered, and the publication having been made in the required number of issues of the Daily Phoenix, as published, the fact that there was no Monday publication is of no consequence, for, as already stated, the statute requires only that the notice be published in consecutive issues, and not on consecutive or successive days of the week.

The judgment of the trial court is affirmed.

All the Justices concur.