**RAWLINS et al. v. WARNER-QUINLAN ASPHALT CO. et al.**

No. 9725—Opinion Filed July 30, 1918.

(174 Pac. 526.)

1. **Municipal Corporations—Special Assessment—Presumption of Regularity—Burden of Proof.**

The proceedings of a municipal corpora-

tion, making street improvements and assessing and levying taxes to pay therefor, are presumed to be regular, and the burden is upon one attacking the collection of assessments so made by such municipal corporation to show irregularity in such proceedings.

2. **Same — Publication of Necessity — Sufficiency.**

Where the collection of assessments for street improvements is sought to be enjoined because of failure to legally publish the preliminary resolution of necessity, the fact that the affidavit of publication of such resolution fails to affirmatively show that the newspaper in which the same was published was a legal publication, within the definition contained in section 5103, Comp. Laws 1909, and within the provisions of the charter of said municipal corporation, does not sustain the burden imposed upon the plaintiff.

3. **Constitutional Law—Municipal Corporations—Legislative Questions — Improvement Districts — Review by Court.**

The Legislature may create or authorize the creation of street improvement or taxing districts, and charge the cost of a local improvement in whole or in part to the property in such districts, and property within such taxing district is presumed to be benefited by such local improvement to the extent of the cost thereof. Whether or not such property is in fact so benefited is a legislative question, and, having been determined by the Legislature, is not open to judicial inquiry.

4. **Municipal Corporations — Improvement Statutes—Constitutionality.**

Statutes authorizing municipal corporations to improve the streets thereof by paving, curbing, and guttering the same, and to assess the entire cost of such improvement to the lands abutting upon the street improved in proportion to the benefits accruing to the respective lots and parcels of land, do not contravene the Constitution of the United States or of this state.

5. **Same—Street Assessments—Evidence as to Benefits—Admissibility.**

The Legislature having determined that a municipal corporation may be authorized to assess the entire cost of a street improvement upon lands abutting upon and benefited thereby in proportion to such benefits, whether or not such abutting property is benefited to the extent of such costs is not open to judicial inquiry, and evidence offered. in an action to enjoin the collection of assessments levied to pay the cost of such street improvement, to show that the abutting property was not benefited to the amount of the cost of the improvement assessed against it, is incompetent, and was properly rejected by the court.

(Syllabus by Rummons, C.)

Error from District Court, Garfield County; J. C. Robberts, Judge.

Action by J. J. Rawlins and others against the Warner-Quinlan Asphalt Company and others. Judgment for defendants, and plaintiffs bring error. Affirmed.

John C. Moore, for plaintiffs in error.

McKeever & Moore, for defendants in error.

Opinion by RUMMONS, C. This action was instituted on January 9, 1916, by the plaintiffs in error, hereinafter styled plaintiffs, against the defendants in error, hereinafter styled defendants, to enjoin the collection of certain paving assessments in the city of Enid. The defendants had judgment, and plaintiffs prosecute this proceeding in error to reverse the same.

On January 10, 1910, the city commissioners of the city of Enid adopted the preliminary resolution of necessity to pave the streets in the paving district herein involved. The sufficiency of the preliminary resolution is not attacked by the plaintiffs, but complaint is made that said resolution was not published as required by law.

Section 5103, Compiled Laws of 1909, provides that no legal notice published in any newspaper shall have any force or effect, unless the newspapers in which the same is published has a general circulation in the county, and has been continuously and uninterruptedly published therein for a period of 52 weeks prior to the first publication of the notice. The charter of the city of Enid provides that the publication of all legal notices of the city shall be made in some newspaper, which is of general circulation in said city, and which must have been of a continuous publication for a period of at least one year in the city of Enid. Section 615, Rev. Laws 1910, provides that the preliminary resolution of necessity to pave streets shall be published in six consecutive issues of a daily newspaper, or two consecutive issues of a weekly newspaper published and having a general circulation within such city. The affidavit of publication of such preliminary resolution is as follows:

"State of Oklahoma, County of Garfield—ss:

"M. T. Sexsmith, of lawful age, being duly sworn, on his oath says: That he is adv. manager of the Enid Eagle, a daily newspaper published at Enid, in Garfield county, Oklahoma, and of general circulation in said county and state, and that the attached notice was published in the regular edition, and not in a supplement thereof, for six consecutive issues; the first publication being on the 11th day of January, 1910, and the last on the 18th day of January, 1910.

"M. T. Sexsmith."

It is contended on behalf of plaintiffs that the publication does not sufficiently appear, for the reason that the affidavit does not show that the Enid Eagle was a legal publication, within the terms of section 5103, Compiled Laws 1909, or within the terms of the charter of the city of Enid, nor does it appear that it was of general circulation in said city of Enid. It will be borne in mind that this action was instituted by the plaintiffs to restrain the collection of assessments levied against their property, and that the burden was upon the plaintiffs to establish the invalidity of such assessments. It is contended on behalf of the plaintiffs that we cannot take judicial notice of the circulation or publication of newspapers in the state, but counsel for plaintiffs overlooks the fact that the proceedings of the commissioners or council of a municipal corporation making street improvements and assessing and levying taxes to pay therefor are presumed to be regular, and that the burden is upon the one attacking the collection of assessments made by such municipal corporation to show the irregularity of the proceedings of the commissioners or council. Berry v. City of Stillwater, 49 Okla. 560, 153 Pac. 870; Board of Commissioners of Garfield Co. v. Field, 63 Okla. 80, 162 Pac. 733.

In the instant case the trial court sustained a demurrer to the evidence of the plaintiffs. The only evidence offered as to the sufficiency of the publication of the preliminary resolution was the affidavit of the publisher above quoted. While this affidavit does not show that the newspaper in which the resolution was published was a legal publication, within the statute or the charter of the city of Enid, or that it was of general circulation in said city of Enid, on the other hand, the affidavit does not tend to prove that such newspaper was not a legal publication, and was not of general circulation in said city. The plaintiff's having failed to meet the burden imposed upon them of showing failure to legally publish such preliminary resolution, we must hold adversely to their contention in this respect.

The only other ground upon which plaintiffs rely to defeat these assessments is that the board of appraisers who made the assessments were employed to make and did make such assessments to cover the cost of

street improvement. and did not assess to the various parcels of land in the street paving district the benefits accruing to such parcels of land by such street improvement. The resolution appointing the board of appraisers. after reciting the cost of the improvement, and reciting that the city of Enid is obliged to assess, levy, and collect the cost of said improvement against the lots and tracts of land benefited thereby, describing them, proceeds as follows:

"Now, therefore, C. E. Mehew, Guy S. Manatt, and A. A. Traver, three disinterested freeholders of the city of Enid, and not owners of any property to be assessed for the above improvements, are hereby constituted and appointed a board of appraisers to appraise and apportion the benefits to the several lots and pieces of land to be assessed and charged under the law and the contract hereinbefore mentioned with the cost of said improvements, and perform all such acts as by the law they are or may be required to do."

The report of the board of appraisers, so so, far as is necessary to be here considered, is as follows:

"That within five days of being notified of our appointment we proceeded to appraise and apportion to said several lots and tracts of land the benefits resulting thereto on account of making said improvements. That in making said appraisement and apportionment we first apportioned to each quarter block its due proportionate charge according to the amount and cost of work performed upon the abutting streets and other public places, including street intersections and alley crossings, which respective amounts so appraised, apportioned, and adopted we find just. equitable, and accurate, and that the several respective quarter blocks are benefited to the extent of the respective amounts apportioned. That after such subdivisions into quarter block districts we appraised and apportioned to the several lots and tracts of land therein the respective amounts set opposite the description of said lots and tracts of land contained in the statement hereto attached, and marked Exhibit A, and made a part hereof, which respective amounts we find equitable and just according to the benefits accruing to said several lots and tracts of land."

At the trial the plaintiffs offered to prove that the benefits accruing to the respective parcels of land owned by them and affected by these street improvements was considerably less than the amount assessed against such parcels of land. An objection to this offer of the defendants was sustained by the court. and plaintiffs predicate error upon such ruling.

It is earnestly contended by counsel for plaintiffs that under the provisions of our statutes, and under the provisions of our Constitution, the board of appraisers was without authority to apportion the costs of these street improvements among the various parcels of land lying within the district and affected thereby, but was only authorized to appraise the benefit accruing to each of such parcels of land by reason of such street improvements, and that the city commissioners were without authority to assess the costs of these street improvements to such parcels of land. but could only assess thereto the benefits accruing because of such street improvements, as all other cost was unauthorized by our statutes, and, if authorized by them, such statutes contravene section 24, art. 2, of the Constitution, and are void. Sections 619, 620, 626, 627, 628, and 629, Rev. Laws 1910, providing for the making of assessments for the payment of the cost of street improvements, have been repeatedly construed by this court adversely to the contention of plaintiffs. In Oklahoma City v. Shields, 22 Okla. 265, 100 Pac. 559, Mr. Chief Justice Williams, who delivered the opinion of the court, says:

"Was the seventh finding erroneous? From section 3 of the act of April 17, 1908, it appears that the Legislature intended that lots and pieces or parcels of land fronting and abutting upon any such improvements should bear the burden of the expenses thereof to the center of the block, where the abutting way is on the exterior of the block, and to the exterior, where any improvements are made on any alley or other public way in the interior of the block. The quarter block shall be charged with improving the side streets on which said block abuts, together with the areas formed by street intersections and alley crossings, except such portion of such street intersections and alley crossings as may be used by street or steam railways, which cost shall be apportioned among the lots and subdivisions of such quarter block. according to the benefits to be assessed to each lot or parcel; that in case of an alley extending through a block which shall not be in the center of the block. then the assessment shall be made upon the property extending from the exterior of the block to such alley; and, when triangular or other irregular shaped lots or tracts are to be assessed for any such improvement, any part of the cost of such improvement in excess of the benefits accruing to such lots or tracts shall be borne by the city and paid from the street and bridge fund of the city. We think it sufficiently appears from this act that it was the intention that where improvements were made on the front of a block, where all the lots fronted on the abutting im-

provement, and extended back to an exterior parallel boundary, that they should bear their proportion of the cost of such improvement, according to the frontage of the abutting property. But where it was on a side street, where the lot extended back to the interior from the front, resulting in the corner lot entirely abutting on the side street, then the quarter block should bear all the burden of that improvement pro rata with the benefits accruing therefrom. In case of an alley extending, not through the center of the block, but parallel with and of equal length to the exterior of the block, the assessment shall also be made upon the abutting exterior, prorated to the total cost according to the frontage. When triangular or other irregular tracts are to be assessed, any part of the cost for such improvement in excess of the benefits accruing to such lots or tracts shall be borne by the city, and paid from the street and bridge fund of said city. The provision that 'the mayor and council may in their discretion provide for the payment of the cost of improving street intersections and alley crossings, which cost shall be provided for and paid by such city, and for the purpose of paying such expense a separate and special levy shall be made and entered against all the property of the city at the next annual tax levy after such estimate is made, which said expense shall embrace the pro rata part of the expense of advertising and making profiles and specifications, together with the expense charged by the city engineer, superintendents, and in all other respects, is valid. The fact that Const. par. 7, art. 10 (Bunn's Ed. § 272), specifically authorizes county and municipal corporations to 'levy and collect assessments for local improvements upon property benefited thereby, homesteads, included, without regard to a cash valuation,' is not such an exclusive grant (Const. § 36, art 5 [Bunn's Ed. § 190]; Cooley's Const. Lim. [7th Ed.] pp. 265, 266) as to preclude the city from levying an annual tax therefor against all the taxable property of the city. Section 5 provides that the board of appraisers shall appraise and apportion the benefits to the several lots and tracts of land, designated by proper resolution. The benefit to the abutting property on the exterior of the block, where the alley is in the center of the block, or where not in the center, but running the same parallel distance with such exterior, is fixed arbitrarily according to the pro rata frontage, and is not a matter of judgment, but of calculation, with said board, though it is otherwise as to the assessment of side street frontage and triangular and irregular shaped tracts."

In Missouri, K. & T. Ry. Co. v. City of Tulsa, 45 Okla. 382, 145 Pac. 398, Mr. Justice Turner, who delivered the opinion of the court, says:

"Of course we do not hold that the assess-ment imposed for improving Cameron street on the north half of lot 7 in block 18, and the south half of lot 2 in block 20, and on lots 2, 3, 4, and 5, block 21, is void; this for the reason that they are within the south half of those blocks and are hence within the proper taxing district indicated, and, although included within plaintiff's right of way, are presumed to be benefited by the improvement, whether they are in fact so benefited we cannot say, for the reason that the same is a legislative question, which, having been settled by the legislative power of the city, is conclusive upon us."

In Kerker v. Bocher, 20 Okla. 729, 95 Pac. 981. Mr. Chief Justice Williams, who delivered the opinion of the court, says:

"Also it is within the power of the Legislature to conclusively determine in advance what improvements shall be taxed against certain districts, and it is presumed that the Legislature has determined in advance what property shall be benefited to the extent of the cost of such improvement. French v. Barber Asphalt Co., 181 U. S. 324, 21 Sup. Ct. 625, 45 L. Ed. 879; Paulsen v. City of Portland, 149 U. S. 30, 13 Sup. Ct. 750, 37 L. Ed. 637; Meier v. City of St. Louis, 180 Mo. 391, 79 S. W. 955; Cooley on Taxation (3d Ed.) vol. 2, p. 1257; Harton v. Town of Arondale, 147 Ala. 458, 41 South. 935."

In Alley v. City of Muskogee, 56 Okla. 599, 156 Pac. 315, Mr. Justice Sharp, who delivered the opinion of the court, says:

"At the outset it may be said that, like general taxes, special assessments are enforced proportional contributions, imposed, not at regular recurring periods to provide a continuous revenue, but instead are levied only occasionally as required; they are imposed, not upon the general body of the citizens, but upon a limited class of persons who are interested in a local improvement, and who are assumed to be benefited by the improvement to the extent of the assessment; they are imposed and collected as an equivalent, actual or presumed, for the benefit, and to pay the cost of the improvement. Special assessments proceed upon the theory that when a local improvement enhances the value of neighboring property, it is reasonable and competent for the Legislature to provide that such property should pay for the improvement. In a general levy of taxes, a contribution is exacted in return for the general benefits of government; in special assessments, the contribution is exacted because the property of the taxpayer is considered by the Legislature to be benefited over and beyond the general benefit of the community. In Dillon on Municipal Corporations, § 1432, it is said that whether the constitutions of the various states contain provisions which prohibit the Legislature from assessing the expense of local im-

provements upon property in the vicinity has given rise to numerous decisions; that in the leading case (People v. Brooklyn, 4 N. Y. 419, 55 Am. Dec. 266) it was held, upon great consideration, in an opinion the reasoning and conclusion of which have almost everywhere been adopted, and which is regarded as historically and legally sound, that the ordinary and usual legislation of such character does not contravene the constitutional provision that: 'No person shall be deprived of life, liberty or property, without due process of law; nor shall private property be taken for public use without just compensation.' The former provision is identical with section 7, art. 2, of the Oklahoma Constitution, of which it is said the statute is violative. It may be regarded as definitely settled that the Legislature of the state may create, or authorize the creation of, special improvement or taxing districts, and charge the costs of a local improvement, in whole or in part, upon the property in such districts, or according to valuation or superficial area or frontage, without violating the Fourteenth Amendment to the federal Constitution, and that the whole expense of paving or of improving a street or highway may be assessed by a municipality, pursuant to statutory authority, upon the lands abutting upon the street or highway so improved, in proportion to the feet frontage of such lands, without providing for a judicial inquiry into the value of such lands and the benefits actually to accrue to them by the proposed improvement."

In City of Chickasha v. O'Brien, 58 Okla. 46, 159 Pac. 282, upon rehearing, the court had under consideration the constitutionality of section 644, Rev. Laws 1910, being the statute limiting the commencement of actions to defeat paving assessments to 60 days. Mr. Justice Hardy, who delivered the opinion of the court, says:

"The assessments which are complained of are enforced proportional contributions imposed upon the class of persons affected thereby, who are interested in the local improvement for the payment of which said assessments were levied, and who are assumed to be benefited by the construction of such improvements, to the extent of the assessments levied, which are imposed and collected as an equivalent for the benefit, actual or presumed, and to pay for the cost of such improvements. Such assessments are justified upon the theory that the improvement enhances the value of the abutting property, and that it is reasonable and competent for the Legislature to require the costs thereof to be assessed against the property benefited thereby. Alley v. Muskogee et al., 56 Okla. 599, 156 Pac. 315. With this view of the nature of the burdens imposed by the assessments, there ought to be no great difficulty in the determination of the question here urged. That the statutes under which the assessments were levied constitute due process of law and do not infringe upon the Constitution of this state or of the United States is now too well settled to need further argument. Shultise v. Town of Taloga et al., 42 Okla. 65, 140 Pac. 1190; Alley v. Muskogee, supra; Mellon Co. v. McCafferty et al., 38 Okla. 534, 135 Pac. 278; Davidson v. New Orleans, 96 U. S. 97, 24 L. Ed. 616; French v. Barber Asphalt Co., 181 U. S. 324, 21 Sup. Ct. 625, 45 L. Ed. 908. The precise question under consideration is whether the construction placed upon section 644 offends against the Constitution in any of the respects mentioned. The ground upon which it is claimed said section must fall is that it deprives the property owner, against whose property the assessment is levied, of the right to restrain the collection of said assessment because of the fraudulent failure of the contractor to perform the work and construct the improvements, according to plans and specifications, where such default occurs more than 60 days after the passage of the final assessment ordinance. This is another way of saying that, because the anticipated benefits have not been realized, the levy of the assessments is illegal and can be restrained. * * * There is no right vested in the individual to reduce the amount of an assessment levied against his property because of failure of anticipated benefits by way of counterclaim or set-off. In Houck v. Little River Drainage Dist., 239 U. S. 254, 36 Sup. Ct. 58, 60 L. Ed. 266, the Supreme Court discusses the nature of taxes of this character, and the obligation of property owners, in the following language: 'A tax is an enforced contribution for the payment of public expenses, it is laid by some rule of apportionment according to which the persons or property taxed share the public burden; and, whether taxation operates upon all within the state or upon those of a given class or locality, its essential nature is the same. The power of segregation for taxing purposes has every day illustration in the experiences of local communities, the members of which, by reason of their membership, or the owners of property within the bounds of the political subdivision, are compelled to bear the burdens both of the successes and of the failure of local administration. When local improvements may be deemed to result in special benefits, a further classification may be made and special assessments imposed accordingly; but even in such case there is no requirement of the federal Constitution that for every payment there must be an equal benefit.' And likewise the right to reduce an assessment by way of counterclaim has been denied in the following cases. wherein it has been held that, by reason of the origin, obligatory force, and nature of such special assessments a property owner has no right to reduce the

amount of his assessment because of the negligent performance of the work or for the other cause, and that, if damages have been sustained by him, it is not a proper subject of set-off or counterclaim against the amount of his assessment, unless authorized by statute. Indianapolis, etc., R. R. Co. v. State, 105 Ind. 37, 4 N. E. 316; Laverty v. State, 109 Ind. 217, 9 N. E. 774; Lux, etc., Stone Co. v. Donaldson, 162 Ind. 48, 68 N. E. 1014; Dawson et al. v. Hipskind et al., 173 Ind. 216, 89 N. E. 863; Himmelmann v. Spanagel, 39 Cal. 389; Hornung v. McCarthy, 126 Cal. 17, 58 Pac. 303; Pittsburgh v. Harrison, 91 Pa. 203; Burlington v. Palmer, 67 Iowa, 681, 25 N. W. 877; Whiting et al. v. Mayor, 106 Mass. 89; Mack et al. v. Cincinnati, 7 Ohio Dec. (Reprint) 49. Here no such right is conferred by statute, but is expressly legislated against, and the authority of the Legislature so to do is clearly established by the authorities cited. By providing that no suit shall be maintained after the expiration of 60 days to set aside any such assessment, or to enjoin the making of such improvements or levying or collecting any such assessment or installment thereof, or interest or penalty thereon, or issuing such bonds or providing for their payment, or contesting the validity thereof on any account, or for any reason other than for jurisdictional matters, assurance is given would-be purchasers of such securities that an investment therein will be secure from litigation of the character enumerated after the time fixed by said section; and thereby the value of such bonds will be enhanced and protected in the hands of purchasers, and such provisions will permit the sale thereof in the markets of the country at a better price than otherwise could be made. The acts of the municipality in paving its streets is a work of a public character, and is the exercise of governmental function, even though such work is paid for by the benefited property owners (Norris v. City of Lawton, 47 Okla. 213, 148 Pac. 123.) and the method by which the funds are to be secured to carry on such work is an exercise of the power of taxation delegated to the municipality, and the burdens imposed by it, in the exercise of such delegated power, are such as must be borne by the property owners affected thereby, who must take the risk of the faithful performance of their duties by those who are entrusted with the construction of such improvement, and who must share in the successes and failures of all such undertakings.

From the foregoing authorities we think the rule is clearly established in this state that it is within the power of the Legislature to provide that the entire cost of street improvements may be assessed against the property benefited thereby, without regard to whether the actual benefit equals the amount of such cost or not, and that the presumption arises that the benefits accruing to the property are equal to the cost, and that such legislation is not in conflict with the Constitution.

The judgment of the trial court should therefore be affirmed.

By the Court: It is so ordered.