Argued and submitted September 19, reversed November 17, 1980

In the Matter of the Compensation of
William G. Funke, Claimant.

**FUNKE,**
*Petitioner,*

*v.*

STATE ACCIDENT INSURANCE FUND,
*Respondent.*

(No. 79-917, CA 17702)

619 P2d 668

Steven Goldberg, Salem, argued the cause and filed the brief for petitioner.

Darrell E. Bewley, Associate Counsel, State Accident Insurance Fund, Salem, argued the caused for respondent. With him on the brief were K. R. Maloney, Chief Counsel, State Accident Insurance Fund, and James A. Blevins, Chief Trial Counsel, State Accident Insurance Fund, Salem.

Before Gillette, Presiding Judge, and Roberts and Campbell, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

This is a Workers' Compensation case in which the sole issue is the compensability of claimant's ulnar nerve condition. The referee found the injury compensable. The Board reversed. We agree with the referee, and therefore reverse the Board.

Claimant received an industrial injury in late November, 1977, while working for a tanning company. He was injured when his wrist was extended while he was stretching leather with a whet stone. As he was pushing the stone across the leather, it struck a soft spot, causing his left wrist to turn under and exerting a pulling sensation on the arm.

Claimant's condition was first diagnosed as tenosynovitis of the left wrist. The first medical notation of a problem with his left elbow appears in a December 9, 1977, report of a second physician. Thereafter, a diagnosis of the ulnar nerve problem was made on January 11, 1978, during an examination at the University of Oregon Health Sciences Center. After extensive subsequent examination and treatment, the ulnar nerve condition was corrected by an operation on November 17, 1978.

Claimant's problem is "ulnar nerve subluxation with ulnar nerve neuropathy." That is, the ulnar nerve moves in and out of a groove in claimant's left elbow, which movement results in irritation to the nerve (neuropathy) with resultant tingling and numbness in certain portions of his left hand. The question in this case is whether the subluxation of the nerve occurred as a result of the industrial injury. The question is one of medical causation, requiring the testimony of experts.

In addition to the numerous medical reports in this case, an expert medical witness testified for each side. Claimant's expert, Dr. Laycoe, is a resident orthopedic surgeon at the University of Oregon Health Sciences Center. He performed the surgery which repaired the ulnar nerve subluxation. After review of all of the history and reports of other doctors, as well as in consideration of his own clinical findings during the operation, Laycoe was of the opinion that the subluxation of claimant's ulner nerve

resulted from the hyper-extension of his wrist at the time of the November, 1977, injury. Laycoe relied particularly upon the fact that claimant had had no prior difficulty with the elbow and noted that, had there been a subluxation of the ulnar nerve prior to the 1977 incident, it was most likely that the claimant would have noticed it. He explained the fact that the ulnar nerve problem was not noted immediately after the injury by stating that the symptoms of the ulnar nerve neuropathy might not arise until some time after the nerve began to subluxate.

The respondent's witness was Dr. Yatsu, head of the Neurology Department at the Health Sciences Center. Yatsu had examined the claimant in April, 1978, after referral of the claimant by the Orthopedics Department at the Health Sciences Center due to a possible ulnar nerve problem. At the time of his examination in April, 1978, he found no conclusive evidence of an ulnar nerve problem, but did find the claimant was suffering from traumatic myositis. He noted at the time that claimant had a "long, tortuous" ulnar nerve. He acknowledged that, particularly in view of the unusual kind of ulnar nerve which claimant possessed, it was possible that an accident of the kind claimant experienced might cause the nerve to become subluxated at the elbow. However, he was of the view that it was more probable that the nerve had been mobile for a long period of time and that the claimant's ulnar nerve condition was therefore unrelated to any particular exertion or accident.

This is a very close case. As we view it, however, two non-medical factors, when viewed in the light of the medical testimony, make it more probable than not that the ulnar nerve condition was a result of the industrial injury. The first factor is a purely temporal one: the subluxated nerve and the neuropathy appeared soon after the industrial injury. The second factor turns in part on the claimant's credibility: both doctors were of the opinion that, had the claimant had a subluxated nerve for a significant period of time, he would have noticed the fact that the nerve was slipping in and out of its appropriate groove at the elbow. The claimant testified that he had never had any discomfort at the elbow, and the referee apparently believed him.

Under these circumstances, *i.e.,* the appearance of the condition following the accident, the likelihood that the condition would have been noticed had it existed prior to the accident, the opinion of one expert that the condition was caused by the accident, and the admission by the opposing expert that, particularly in view of claimant's unusual ulnar nerve, the condition could have arisen out of the accident, we are persuaded that the claimant's ulnar nerve condition was a consequence of his compensable industrial injury.

The order of the Workers' Compensation Board is reversed.