Argued and submitted October 22, reversed December 8, 1980

In the Matter of the Compensation of
Willard Babb, Claimant.

BABB,
*Petitioner,*
*v.*
STATE ACCIDENT INSURANCE
FUND CORPORATION,
*Respondent.*

(WCB No. 78-3214, CA 17894)

619 P2d 1362

Rolf Olson, Salem, argued the cause for petitioner. With him on the brief was Olson, Hittle, Gardner & Evans, Salem.

Darrell E. Bewley, Appellate Counsel, State Accident Insurance Fund Corporation, Salem, argued the cause for respondent. On the brief were K. R. Maloney, General Counsel, and James A. Blevins, Chief Trial Counsel, State Accident Insurance Fund Corporation, Salem.

Before Gillette, Presiding Judge, and Roberts and Campbell, Judges.

ROBERTS, J.

**ROBERTS, J.**

In this Workers' Compensation case the referee awarded permanent total disability. The Board found claimant's heart problems, eye condition, right ulnar problems, psychological condition and diabetes were not related to an industrial injury and reversed the award in its entirety. We reverse the Board.

Claimant first raises the question of whether SAIF is estopped from denying compensation because it accepted the claim and paid benefits for approximately two years. The Supreme Court has answered that question in the negative in *Frasure v. Agripac,* 41 Or 7, 596 P2d 1015 (1980).

The incident which precipitated this claim occurred on January 4, 1977, when claimant, who is 45 years old and operates his own surveying business, slipped on a log, causing him to fall into the brush. The fall caused a blow to the back of the left leg, and his right eye began watering. His leg and eye continued to bother him for the remainder of the day. The next morning he started to work, but because he did not feel well he returned home. He was still complaining about his leg and eye. He made a doctor's appointment, but on the way to the doctor's office claimant became unconscious; when taken to the doctor's office, he had no pulse or blood pressure. Claimant was hospitalized and revived.

The Board's opinion sets out the medical questions as follows:

"The medical question which is to be decided is did claimant's fall cause an embolism to develop in his leg which in turn traveled to the right side of his heart causing cardiac arrest and lodging in the lung or did claimant have a myocardial infarction leading to cardiac arrest and subsequently developed a pulmonary embolism.

"The second medical question is did claimant also suffer from his industrial injury a scarred cornea leading to visual loss; ulnar nerve entrapment; development of diabetes and psychological personality changes."

The Board then based its decision to deny compensation based on the heart condition on the testimony of Dr. Griswold, a cardiologist whom the Board found more persuasive

and who concluded "claimant had a myocardial infarction about one hour prior to the hospital admission which led to cardiac arrest." Dr. Griswold concluded the fall did not contribute to this incident. The Board also found Dr. Johnson, an opthalmologist, more persuasive in determining whether there had been an injury to the eye in the fall. Dr. Johnson did not believe claimant's eye problem was related to the fall. Because the Board concluded claimant experienced a myocardial infarction rather than an embolism, it necessarily also found claimant's diabetes and other medical problems were not related to the fall.

■  While the evidence relied upon by the Board is somewhat persuasive, in our *de novo* review the other medical evidence relied upon by the referee convinces us to find the injury to be compensable. The referee's opinion states in part:

> "* * * I conclude that the weight of the evidence favors compensability. Though Dr. Griswold is clearly more experienced in heart cases, the impact of Dr. Sproed's opinion and reasoning, buttressed by the opinions of Dr. Grossman and Dr. Vervloet is significant. The treating doctor's intimate familiarity with the claimant's health history and problems makes his opinion persuasive.

> "As to the eye, I conclude that claimant has proved compensability. Only Dr. Johnson does not connect the scratched cornea with the fall. I am not persuaded that the lack of severe pain in the eye is conclusive. * * * Claimant had no prior eye problems. He had immediate symptoms, i.e., watering and irritation.

> "The aggregate medical evidence does not establish that the arm condition, diabetes and personality changes were caused by non-job related events. Indeed, claimant had none of these problems prior to the injury. The total evidence supports the conclusion that the conditions are related."

Dr. Sproed's diagnosis at the time claimant was hospitalized was "myocardial infarction with cardiac arrest." However, at the hearing he testified that claimant's leg injury had caused a thrombosis which resulted in a pulmonary embolism and the subsequent cardiac arrest. The doctor believed a myocardial infarction had occurred but that it was secondary to the cardiac arrest. Dr. Carey,

an internist, diagnosed "* * * pulmonary embolus, secondary to venous thrombosis in his left leg with some chronic peripheral venous insufficiency and probable coronary heart disease. * * *" Dr. Vervloet, an internist and pulmonary specialist, testified that "the circumstances favored the conclusion that the pulmonary embolus took place before the myocardial infarction." And Dr. Grossman, an internist and diagnostic specialist, testified there were factors present which could have supported either a myocardial infarction or a pulmonary embolism. In view of all this evidence, we do not agree that Dr. Griswold's testimony as to the cause of the heart condition is the most persuasive.

As to the eye condition, the evidence is not as favorable for claimant. While Dr. Johnson, who diagnosed claimant's loss of sight in the right eye to be 92 percent, believed a scratch in the eye would have manifested itself in severe pain, Dr. Grossman believed that the other events surrounding the falling incident may have masked claimant's concern with the eye. The testimony of claimant and claimant's wife established that claimant complained of his eye watering immediately after the accident and continued to do so until the heart condition incapacitated him. The referee apparently believed this testimony, and we will defer to the person who had the opportunity to see and hear the witnesses. *Horton v. Mrs. Smith's Pie Company,* 38 Or App 575, 590 P2d 791 (1979). Also, more than a year after the accident claimant was examined by Dr. Long, an opthalmologist, who said, "Slit lamp examination demonstrated a corneal scar on the right (eye)." There is no other evidence of how the scarring might have occurred. We believe this evidence, taken as a whole, outweighs that of Dr. Johnson. *See Funke v. SAIF,* 49 Or App 279, 619 P2d 668 (1980).

■       Finally, as to the other physical problems of claimant, *i.e.,* the abnormal right ulnar nerve condition, psychological problems and diabetes, the medical evidence is that all of them could be the results of the cardiac arrest, when claimant's heart had stopped for three to seven minutes, and the physical and psychological stress claimant suffered as a result. If claimant's condition was the product

of a myocardial infarction and thus not compensable, the other physical problems resulting therefrom would not be compensable. However, because we have concluded the medical evidence establishes that claimant experienced a pulmonary embolus which was the result of the injury to claimant's leg, and is thus compensable, the other resulting ailments are also compensable.

We conclude that claimant's injuries are work related and therefore compensable. The referee's decision is reinstated.

Reversed.